UNITED STATES of America, Plaintiff,

v.

Dennis Dewitt CARLSTON, Defendant.

No. CR–81–30 RPA.

United States District Court,
N.D. California.

March 23, 1983.

Michael D. Nernery, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Patrick S. Hallinan, San Francisco, Cal., for defendant.

## MEMORANDUM ON SENTENCING, JUDGMENT AND PROBATION/COMMITMENT ORDER

AGUILAR, District Judge.

This action is before the Court for sentencing of the defendant, Dennis Dewitt Carlston, following his plea of guilty to a charge of violation of 26 U.S.C. section 7201, income tax evasion. The maximum penalty that can be imposed for violation of section 7201 is five years imprisonment and/or a fine in the amount of $10,000. The Court has given serious consideration to the punishment of defendant that would best serve the purposes of the criminal law. The Court has reviewed applicable legal authorities, and has read and considered thorough presentence reports prepared by the United States Probation Office, a sentencing memoranda prepared by the United States Attorney's Office recommending the maximum sentence, a report by the National Center on Institutions and Alternatives submitted by defense counsel, and letters of recommendation written on behalf of defendant Carlston. The Court has consulted with the Probation Office. The Court notes that the Probation Office stated in its first recommendation that it did not oppose five years probation conditioned upon some type of community service. The Court has also studied defendant's personal Report to the Court received on March 22, 1983, and the United States Attorney's objection thereto. The Probation Office has previously approved of the plan reflected in defendant's Report.

After serious consideration of all of the above, the Court imposes sentence upon defendant Carlston as follows:

1. Defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of five (5) years, EXECUTION OF ALL BUT SIX MONTHS OF SAID SENTENCE IS HEREBY SUSPENDED. Said sentence shall be served at Ecclectic Communication, Inc. (ECI), a federal community treatment center.

2. Said sentence shall be served as follows:

a. Defendant is to report each Monday morning at 8:00 a.m. to ECI. After reporting, he shall thereafter report by 9:00 a.m. of the same day to the United States Probation Office, 13th and Jackson, Oakland, California, where he shall work upon his community service program. This community service program, described more fully below, will consist of preparing computer programs to be used to instruct clients of the Probation Office in Oakland, teaching the use of the computer and its programs to the clients, and providing remedial and other

training to the clients largely through the use of a computer.

b. At 5:00 p.m. defendant shall be released from his daily work at the Probation Office and shall immediately report back to ECI.

c. Defendant shall work at the Probation Office Mondays through Fridays from 9:00 a.m. to 5:00 p.m.

d. From 5:00 p.m. Friday to 8:00 a.m. Monday defendant will be permitted to be at his home with his family or otherwise attending to his own personal business. Defendant is not permitted to leave the greater Bay Area during his six-month custodial period.

e. While defendant is working on his community service program hereinafter described, he is to follow all orders of officials of the Probation Office. However, he shall have full range of self management with respect to the actual implementation of his program.

f. Defendant shall report to ECI at 8:00 a.m., Monday, April 18, 1983, to commence service of the period of incarceration.

3. Following service of said period of incarceration, defendant shall be placed on probation for a period of three (3) years, under the following special terms and conditions:

a. Defendant must devote ten (10) hours per week to the Oakland Probation Officer for a period of six (6) months. The hours of service shall be directed by the Probation Office. This service shall consist of continued supervision of the computer instruction program.

b. Defendant is ordered to reimburse ECI for all reasonable expenses incurred by ECI in connection with the housing and supervision of defendant.

c. Defendant's probation shall be supervised and subject to the usual terms and conditions.

d. Defendant is ordered to establish a trust fund in the amount of $10,000 which sum shall be in lieu of a $10,000 fine. The fund shall be for the benefit of the United States Probation Office, Oakland, California. The account shall require two signatures for withdrawals: defendant's signature, and the signature of the Supervising Probation Officer for the Oakland Office. The funds in the account shall be used for the purchase of one micro computer, together with hardware, software, educational materials, texts, audio-visual aids, related materials, and maintenance.

The community service program defendant will be required to undertake and operate during his incarceration, and continue to supervise as a condition of probation, consists of establishing an educational program for probationers and parolees of the United States Probation Office, Oakland, California, achieved through the use of a computer. Defendant is expected to design programs and give instruction that will provide remedial training in English and mathematics, training in basic communication skills and word processing, and training in any other areas that would be useful to the clients of the Oakland Probation Office. Defendant will additionally be expected to teach the staff of the Probation Office as to the use of the educational programs he designs to insure continuity of the program once defendant's incarceration and terms of probation are satisfied.

At the request of the Court defendant has provided a Report to the Court setting forth his proposal for his community service work. The Court has reviewed the program and incorporates it herein by reference. The Court feels the purposes of defendant contained in the Report adequately meet the purposes of the Court in requiring the community service work. The Court is impressed with defendant's sincere enthusiasm and interest in the community service program and is satisfied that he will sincerely dedicate himself to the success of the program.

 In imposing the above sentence, the Court has carefully considered the four primary purposes of the criminal law in punishing acts deemed contrary to the interest of society: deterrence of the criminal from future unlawful conduct, restraint of

the criminal, rehabilitation of the criminal, and deterrent effect upon society as a whole. LaFave and Scott, Criminal Law, § 5, p. 21–24 (1977 Hornbook Series). The Court finds that each purpose has been served by the sentence imposed in this case. How each purpose has been served is discussed below.

## Deterrence of the Criminal

Defendant's offense is a serious one. Defendant has engaged in acts of concealment of his income in order to prevent the IRS from discovering his true income. The Court feels that defendant's incarceration of six months at a halfway house, during weekday periods, will provide ample deterrence such that defendant will not again be tempted to evade the United States taxation laws.

Defendant has never been incarcerated, and has no prior convictions. Defendant will likely be deeply affected by the conditions and persons he will encounter at ECI. Defendant will suffer a significant loss of his privacy rights. Defendant will be deprived of the companionship of his family for a significant period of time.

One cannot minimize the punishment value of what is commonly referred to as a halfway house. The temporary experience of relative freedom makes each return to the confinement of the halfway facility more upsetting. Each return to the facility is equivalent to a new incarceration, and the psychological effect upon the confinee is quite possibly greater than that of serving a straight determinate sentence. Upon each return defendant will likely be reminded of the serious distinction between freedom and confinement, and the deterrent impact will be substantial.

For the above reasons, the Court finds that the interest of deterring a criminal offender from future criminal conduct is met by the sentence the Court has rendered in this case.

## Restraint of the Criminal

In explaining its view that there is a serious deterrent effect to confinement in a halfway house, the Court does not mean to imply that deterrence by such incarceration can be accomplished for all convicted criminals. The unique facts before the Court are that defendant has no prior criminal conviction, defendant is well educated, and defendant's crime is a victimless one. Defendant poses no threat of harm to the public, and in fact, the interest of the public will be better served by the Court's sentence than by defendant's incarceration in prison for a lengthy period of time.

Defendant is a bright man and has particular, unique skills in programming computers and providing instruction regarding computers. Many of the clients of the Probation Office in Oakland are in great need of basic remedial instruction and/or job training. Acquiring the above skills may well be the difference in the recidivism rate of the clients.

Defendant's role will be to provide computer programs and instruction in both of these areas. For example, some clients will learn basic communication and mathematics skills by using the computer and receiving instruction from defendant. Others will learn job skills such as word processing. The limit to the beneficial use of computer training for probationers and parolees is limited only by the skills and imagination of defendant and the desire of the clients. The Court has strong reason to believe that defendant will maximize the benefits of this program. The computer is rapidly pervading the lives of all of us, rich and poor, young and old. Probationers and parolees can only be helped in their future lives by the understanding and familiarity with computers that will be gained in the course of acquiring other basic skills by using the computer as a teacher.

For all the above reasons, the interests of society will be better served by the sentence imposed by the Court than incarceration in prison. There is no need to physically restrain defendant from society beyond what the Court has ordered, and defendant can accomplish much good for probationers and parolees in the Northern District of California under the sentence imposed by the

Court. Providing probationers and parolees with the skills necessary to become employed and make a living will decrease the risk of recidivism and do far more good for society as a whole than locking defendant up for a period of years.

*Rehabilitation of the Criminal*

■ The interest of rehabilitation of the criminal is served when the sentence causes the criminal to realize the wrongfulness of his conduct, instills the criminal with a sense of social responsibility, and integrates the criminal into a productive social role. *Higdon v. United States,* 627 F.2d 893, 899, n. 14 (9th Cir.1980). Requiring defendant to assist in the training and ultimate rehabilitation of other criminals will accomplish all of these purposes. Defendant will be constantly reminded that his conduct was legally and socially wrong. Defendant will acquire a greater sense of social responsibility because he will be working to help others become productive members of society and therefore will be integrated into a productive social role as a result. The Court further finds that defendant is physically, mentally, psychologically and financially able to perform the community service work the Court demands of him. *Id.* at 899.

In light of the above, the Court finds that the rehabilitation of defendant will be well served by the Court's sentence. In fact, the Court is of the opinion that the interests of rehabilitation will be better served by this sentence than by a lengthy incarceration, as defendant will be more likely to lead a law-abiding life than he would if he were so incarcerated. *See, e.g., U.S. v. Arthur,* 602 F.2d 660, 664 (4th Cir.1979), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979), *cf. Higdon,* 627 F.2d at 899, n. 14.

*Deterrence to Society*

The deterrence-to-society purpose of the criminal law is based upon the theory that the suffering of a criminal for a crime committed deters others from committing crimes "lest they suffer the same unfortunate fate." LaFave & Scott, *supra,* § 5, p. 23. By publication of the trial, conviction and punishment, the public will be educated as to the proper distinction between good and bad. *Id.* Deterrence is important in connection with income tax violations because of our reliance on a system of self-assessment. *See* Sentencing the Income Tax Violator, 26 F.R.D. 264 (1961).

The sentence imposed by the Court does provide for the incarceration of defendant and imposes significant obligations upon defendant to work with the Probation Office during both the period of incarceration and during the period of probation. It is unlikely that the public will feel that defendant is not being seriously punished for what is in essence a victimless crime. Defendant was "caught," was subject to serious and embarrassing criminal proceedings and publicity, will in effect lose six months of his life to incarceration, and will suffer the stigma of a criminal conviction for the rest of his life. Such punishment serves the deterrent effect on society necessary to insure compliance with the tax laws.

For the above reasons, the Court finds that society will be deterred from violating the tax laws by the Court's sentence in this case.

The above judgment and commitment order is applicable to Count Thirteen only.

All other remaining counts of the Indictment are hereby dismissed.

IT IS SO ORDERED.