Kirkpatrick, C, J.
This is a motion to quash an indictment, found at the Oyer and Terminer in Essex county, in September, 1816, and brought up here by certiorari returnable to May Term last.
The counsel for the defendant in support of his motion, has rested upon certain exceptions raised upon the face of the indictment itself; but upon looking into the certiorari and return, some difficulties present themselves, which must necessarily be overcome before we can fairly enter into the consideration of these exceptions.
The certiorari is directed to Andrew Kirkpatrick, Chief Justice of the Supreme Court of judicature, and Aaron Munn and David Crane, esqrs. and others their associates) Justices of the Court of Oyer and Terminer and General Gaol Delivery at Newark, in and for the county of Essex.
And the return is in these words, viz. “ The indictment whereof mention is within made, with all things touching and concerning the same, as fully and entirely as they remain before us, to our Justices of our Supreme Court of judicature at Trenton, as by the writ aforesaid we are commanded, we send. D. Crane, Aaron Munn.
To this writ, thus returned, is annexed by a wafer, a paper supposed to be the original indictment, and nothing more.
*Upon the general principle, that all writs of this nature must be returned by the same person or persons to whom they are directed ; if directed to certain by name, then by those named; and if to certain by description of office, then by those within such description ; and also upon the authority of the case of Odell v. Moreton (Cro. Jac. 254) and some other general sayings to be found in the books (Salk. 479, Com. Dig. Certiorari) it is doubted whether this return by two of the justices only, be good. And it is especially so, because by the statute of 1794, constituting *50 these courts, it is enacted; that the Justices of the Supreme 'Court and the Judges of the Courts of Common Pleas in the several counties, or any three or more of them, of whom one of the Justices of the Supreme Court shall always be one, shall constitute the Cowrts of Oyer and Terminer and General Gaol Delivery in and for said counties respectively; from which it would seem as if the justice of the Supreme Court should always be one of those returning such writ, iii order that it may appear to he the act of the cburt, and nbt of any individual justice or justices thereof. For though a certiorari, or other writ of that nature, should have been allowed without the assent, or even contrary to the opinion of the justice of the Supreme Court, as well it may, yet such allowance being lawfully made, such justice is obliged to join in the return, according to the command of the writ, his dissent from the allowance notwithstanding.
In this case, however, no such difference of opinion existed; but through the hurry of business, probably, the clerk was not able to make out the return until after the sitting of the court, and until after the departure of the Chief Justice from the county. And therefore it is, that the return is made by two of the justices only.
It was thought proper to look into this matter thus far, as well to fix the principle upon which these writs ought to be returned, as to account for the present returns not being signed by the Chief Justice, who presided at the court.
But even though the return, in this respect, should he thought well enough, there still remains á difficulty much more formidable, to be encountered.
Wh&t is the return ? A paper supposed to be the original indictment, is annexed to the writ, and nothing more. Now this is wholly insufficient.
*When the grand jury return into court, and present an indictment, an entry is made in the minutes of such presentment; stating against whom the same is, and for what crime ; and then the indictment itself passes .to the files of the court, there to remain, until it becomes necessary to make up the record. Regularly this ought to be done, instanter, and the further proceeding to be continued *51 thereupon until the final judgment, and then to be affiled among the rolls.
This record, like all others, contains a complete history of the cases. It sets forth the time and place of the sitting of the court; by whom liolden; by what authority: of what they are authorised to inquire ; what to hear and determine; and by whom they are to inquire and try: it sets forth also, the names of the grand jury, their .qualifications, which of them are sworn, and which affirmed, and why affirmed ; and then the presentment.
All that part of the record, which precedes the recital of the indictment, is called the caption, and may, as well as the indictment itself, furnish matter of plea or ground for motion to quash &c. The defendant may take exception to the time of holding the court, the place where, the justices before whom, their authority to inquire and try ; also, to the manner of convening the grand jury, their individual qualifications, their not being sworn, &c. (a)
But though the making up of the roll immediately, so far as the close of the recital of the indictment, be the more regular practice, and in some points of view, certainly most for the advantage of the defendant, yet it has been usual to suffer all the materials, from which it is to be ma.de, to remain in paper until the final judgment be lendered, and then, and not till then, to make up the whole record.
This, so far as my knowledge goes, has been the approved course in New-Jersey, where the proceeding, trial, and judgment have been had in the same court in which the indictment was found. But in all cases where a certiorari is presented, whether before or after plea pleaded, it is essential that the proceedings, so far as they have gone, be enrolled, and that that roll, and nothing else, be certified to the upper court.
The books tell us, that where the certiorari is intended to bring up a record to be offered in evidence only, or for other collateral purpose, there the tenor only of the record is to be *called for and certified ; but that where the court above is to take further proceeding upon it, there the *52 record itself, is to be certified. But notwithstanding this mode of speaking, it is very certain, that at this day, even in the last case, the individual record is never sent, but a transcript only; which transcript, being properly certified, is in judgment of law, the record itself. It must be certified, however, as the record, and not as a tenor or transcript, which is now always done. The individual indictment, therefore, presented by the grand jury, never comes up with the certiorari, but the record only, which. contains the whole proceeding against the defendant, to any part of which he may except.
The total insufficiency of a return like the present, will manifestly appear, by turning our eyes to the paper sent up. It begins,
The jurors. How many ? Who are they ? Where from ? How qualified.? Who convened them?
Upon their oath. What did they swear ? Who administered the oath, and by what authority did they administer it ? Or was it all voluntary ?
Present. To whom did they present ? Who was authorised to receive such presentment, and how authorised? And
When and where was all this done ?
Would it be possible to put a man to plead to a thing like this ? Certainly not.
What then is to be done with this certiorari and return ? The writ was allowed on the application of the defendant. It was his duty to procure a proper return. Instead of this, he has procured such an one, as that he cannot be put to plead, or be brought to trial.
I do not speak of this, as having been done by any agency of the defendant; nor do I mean to insinuate, in the most distant degree, that he has done anything improper in this matter. Far from it. I suppose it rather to have been a mere mistake of the clerk, and one too, into which he would pretty readily fall, from the very loose manner, in which it is believed, these things have been conducted in most of our courts in latter days, and especially from the common neglect of making up records at all, in almost all cases.
The writ and return, however, have found their way to *53 the files of this court. They have found their way thither, without observation, and without opposition, still improperly. The defendant has at least been negligent. He has delayed the prosecution a long time. He is entitled to no further indulgence.
Let the writ of certiorari, therefore, with the return, be taken from the files of this court. Let the paper annexed, which comes up as the original indictment, be carefully separated from the writ, and be remitted to the clerk of the county of Essex, to be placed again on the files from which it was taken ; and let the writ itself be superceded and a procedendo go.
But, notwithstanding the order, that the writ be super-ceded and aprocedendo go, yet inasmuch as a full argument had been heard upon the sufficiency of the indictment, and the court was prepared to express its opinion upon it; and inasmuch as great trouble and inconvenience might be saved thereby ; it was thought proper to apprise the parties what that judgment of the court must eventually be, should the indictment be properly presented.
The following opinions were therefore delivered.
Kirkpatrick 0. J.
This is a motion to quash an indictment found at the Oyer and Terminer in Essex county, in September, 1816, and brought up here by certiorari returnable to May Term last.
The indictment is for a misdemeanor, in challenging Aaron Ogden esq. to fight a duel with pistols, and is founded upon the statute of 1796, for the punishment of crimes. It consists of two counts. (See state of the case.)
The statute of 1796, upon which the indictment is founded is in these words, to wit: “That if any person shall, by word, message, letter, or any other way challenge another to fight a duel with a rapier or small sword, backsword, pistol, or other dangerous weapon; or shall accept a challenge, although no duel be fought; or knowingly be the bearer of such challenge, or shall any ways abet, prompt, encourage, persuade, seduce, or cause any person to fight a duel, or to challenge another to fight *54 such duel, every person so offending, shall be guilty of á misdemeanor, &c. and shall be punished,” &c.
Upon the words of this statute, it may be observed, in the first place, that when it speaks of a person who- shall knowingly be the bearer of a challenge, or shall any ways abet, prompt, encourage, &c. another to fight, or to challenge, it obviously relates to, *and speaks of, a third person, and not of the challenger or challenged. The bearer of a challenge, is a third person, who carries a challenge for his friend, and not the challenger himself. So he that abets, prompts, encourages, &c. is manifestly in the contemplation of the statute, a person different from him who either sends or receives such challenge. The statute, in the first place, subjects to punishment, the person who shall give or accept a challege: and then it goes farther, and subjects to like punishment, the person who shall be the bearer thereof, or who shall abet, prompt, encourage, &c. another to giv.e, or receive such challenge : and it may be observed in the second place, that the words, abet, prompt, encourage, cause, &c. are to be taken in a strict and limited sense, and not in that more vague and general sense, in which they are sometimes used in common discourse. If a man say of another, that he is a rascal, or a liar, or if he do to him some indignity, or put upon him some mark of disgrace or contempt, and a challenge ensue, he who is guilty of such unjust conduct, may, in some sense, be said to abet, prompt, or cause such person to challenge, but yet an indictment upon this statute, would not lie against him. The words are to be taken in a more limited sense. If it were otherwise, any one who should give an affront, however slight, if it became the cause of a challenge, or might by possibility become so, would be liable to an indictment upon those words. But this cannot be. Here the defendant is indicted as the challenger, and not otherwise.
In considering this motion, therefore, we may fairly lay out of the case, all that part of the statute, which speaks of the bearer of the challenge; and of those who abetj prompt, encourage, persuade, seduce, or cause a person to fight a duel, or challenge another to fight such duel.
The only words of the statute, then, applicable to this *55 case, or pretended to be so, are these: That if any person, sha/l by word, message, letter, or any other way, challenge another to fight a duel, with a rapier or small sword, backsword, pistol, or any other dangerous weapon, he shall be deemed guilty, &c.
It is not necessary to spend time in inquiring, what .must be the form of such challenge, whether verbal or written. It is not necessary to inquire, whether it must contain the word challenge, or, in terms call upon the adversary to fight a duel, or name the particular weapon, with which the duel is to be fought. Whether Challenge or not, is always a question for the jury, upon the whole evidence; and of this evidence, the customs, the modes, the phraseology of these gentlemen of honour, in such cases, must always be part; for it is principally from these, that the true intent and understanding of the parties can be collected. It is not necessary, therefore, at present, to express any sentiment concerning the import, or fair construction of the paper now before us, in that respect.
Nay, it would be improper to do so, for it might be fore, stalling an opinion, which perhaps we may be called upon hereafter, to render in a more solemn manner.
The only question, then, which now presents itself for consideration, is, whether the indictment, upon the face of it, sufficiently charges the defendant with the crime created by the statute.
It is laid down in our books, that indictments must have precise and sufficient certainty. They must set forth the crime with clearness; they must use the particular words of the act appropriated by the law, to express the precise idea which it entertains of the offence ; and no other words, however synonymous they may seem, are sufficient. In treason, treasonably and against his allegiance. In murder, murdered; not killed or slew. In felony, feloniously. In burglary, burglariously, &c. 4 Black. Com. 306. And no circumlocution, however well it might be thought to describe the crime, can supply these words of art. Without them the indictment is bad.
So an indictment founded upon a statute, must by express words, bring the offence within the description of the statute; and such words cannot be supplied by the *56 general conclusion, “ against the form of the statute,” &c. 2 P. C. 170, 192.
jf a statute take away the benefit of clergy, in a certain felony, the indictment must bring the party precisely within the words of the statute, otherwise, although possibly the fact may be within the statute, and though it may appear so in the evidence, yet if it be not alleged in the indictment in express words, the party, though convict, shall have his clergy. . 2 Hale, P. C. 336.
It -is a settled rule, that in an indictment, nothing material shall be taken by intendment or implication. 2 Hawk. 324.
Again. It is a general rule, that neither the words, against the form of the statute, nor any periphrasis, intendment, or conclusion, will make good an indictment, which does not bring the *fact prohibited or commanded, in the doing or not doing of which, the offence consists, within the very words of the statute. 2 Hawk. 354-
Further. Where the words of the statute are descriptive- of the nature of the offence, the indictment must follow the very words, and expressly charge the offence upon the defendant. Burrows, 1037.
In a criminal charge, there is no latitude of intendment, to include any thing more than is charged. Burrows, 1127.
Individual cases, almost without number, might be brought to establish the same rule? but the books already cited, being of the highest authority, and wholly uncontradicted, it is presumed will be deemed sufficient.
Now then, let us apply this rule to the case before us.
The indictment, in the first count, says the defendant, wrote, or caused to be written, a certain paper writing, (reciting it) meaning and intending by the said naper writing, a challenge to the said Aaron Ogden, to fight a duel with pistols, and that he sent and offered the same to the said Aaron Ogden for acceptance. And the second count is in the same words, except that it recites only part of the writing set forth in the first count.
It does not say, that the defendant challenged Aaron Ogden to fight a duel with pistols; it does not say that the paper writing, by him written and sent, was a chai *57 tenge to fight, or that it contained in it such challenge ; but merely that he wrote and sent it, intending it as The offence created by the statute, is challenging; the charge in the indictment is, writing and sending a paper intending to challenge. The indictment, then, does not, according to the rule, follow the very words of the statute, nor expressly charge the very offence created upon the defendant.
Suppose a defendant to plead, and a jury to pass upon the issue, and to find the defendant guilty. They can only find him guilty in manner and form, as he stands charged. They can only find that he wrote and sent the paper with intent, &c. but whether in truth and in fact, it be a challenge or not, they cannot find, for it is not in the issue. Gan we then apply to it, the old doctrine of libel, where the jury was put to find the printing and publishing only, and the court wras to determine whether libel or not; shall we say here, that if the jury shall find the writing and sending of the paper, intending, &c. they have completed their business, and that the judges are to determine ^whether it be a challenge or not. It cannot be pretended.
Because then, the indictment does not follow the very words of the statute, nor expressly charge the very offence created upon the defendant, and because there can be allowed no latitude of intendment to include any thing more than is charged, and because, even if a verdict were found, it would be inconclusive and inoperative, and no judgment could be passed upon it:
Therefore let the indictment be quashed.
Rossell J.
Thomas Gibbons was indicted on the 56th section of the penal law of New-Jersey: so much of which as is necessary to notice on the present question, reads in the words following, viz. “ If any person shall, by word, message, letter, or any other way challenge another to fight a duel with a rapier or small sword, back sword, pistol or other dangerous weapon, &c. he shall be deemed to be guilty of a misdemeanor, and suffer the penalty,” &c.
The indictment contains two counts. 1st. That the *58 said Thomas Gibbons did unlawfully, wickedly and ma-write a certain paper in the words stated in the indictment, meaning and intending by the said writing, a challenge to Aaron Ogden, to fight a duel with pistols, which the said Thomas did send or cause to be sent and offered to the said Aaron, for acceptance, by Jonathan Dayton, contrary to the form of the statute, &c. The 2d. That the said Thomas did write and cause to be written, a paper writing, in the words, letters and figures following, viz. “ Elizabeth-Town, 25th of July, 1816. Sir, I understand that you have interfered in a dispute between Mrs. Gibbons (the wife of the said Thomas Gibbons meaning) and myself, which has been brought on by John Trumbull and wife. My friend General Dayton will arrange with you the time and place of meeting. Elizabeth-Town, 26th of July, 1816. Thomas Gibbons.” Meaning and intending by the said writing last mentioned, a challenge to the said Aaron Ogden, to fight a duel with pistols, with and against the said Thomas Gibbons, which said writing last mentioned, meaning and intending the same as such challenge as aforesaid, he the said 7 liornas afterwards, to wit, on the day and year last aforesaid, at the township of Elizabeth, in the county and within the jurisdiction aforesaid, unlawfully, wickedly and "“maliciously did send and cause to be sent, to the said Aaron Ogden for acceptance, by the said Jonathan Dayton, contrary to the form of the statute, &c.
The rule of law as laid down in 2 Hale, 170, respecting indictments, is as follows : “An indictment grounded upon an offence made by act of parliament, must by express words, bring the offence within the substantial description made in the act, and those circumstances mentioned in the act to make the offence, shall not be supplied by the general conclusion, contra formam statuti.” Again, in 171. “ If a man be indicted for an offence which was at common law, and concludes' contra formam statuti, but in truth it is not brought by the indictment within the statute, it shall be quashed. As if a man be indicted for drawing his dagger in the church upon J. S. contra formam statuti, viz. 5 E. 6, but omits those words with'an intention 'to strike; the indictment shall be *59 quashed.” So in 1 Black. Com. 90. By an act of parliament. “Any person who shall coin or counterfeit gold or silver coin of Great-Britain, is guilty of hightreason. But if a person is apprehended in the act of coining or is proved to have made considerable progress in making counterfeit pieces resembling such gold or silver coin; yet if they are so imperfect as no one would take them, he cannot be convicted on the charge of coining under that statute.”
These authorities go to prove that not only the offence stated in the indictment must be within the statute, but that the statute itself must be substantially pursued. Our act on which the defendant was indicted, is expressly confined to “ challenging any person to fight a duel with a dangerous 'weapon.” Can we find in the indictment before us, any allegation that the defendant actually committed this offence of challenging ? Sending a letter intending to challenge, and which was not delivered, surely cannot amount by any proper construction of language, to a challenge within the statute. Murder is punishable with death. Should an indictment charge a person with intending to commit that crime, though it was not actually perpetrated ; would the punishment of death be inflicted ? Certainly not.
To challenge to fight a duel is the offence our statute was meant to provide against. Shall then, an intent to challenge, though no challenge was given, bring the offender under the penalty prescribed by the act. I confess I cannot perceive the ^distinction between the two cases. But the state has relied on an authority from 4 Comyns, title Indictment, letter G. “ That certainty to a general intent is sufficient.” This principle is founded on a case from 2 Strange, 904. Rex. v. Lady Lawley. On examination, we find, the indictment was “for endeavouring to prevail on a witness not to give evidence against Joseph Oroke, for perjury; and the exception was that it was not positively averred that Oroke was indicted, it was only laid that she sciens that Oroke was indicted and was to be tried, did so and so, whereas the fact must be positively alleged, and not by inference. But the court held it well enough, and that there is no *60 real difference between indictments and actions, when the git of the action must be positively averred.” This authority is in confirmation of those from Rale and Blackstone. The git of the offence was well stated in that indictment. The git of the offence under our statute is challenging to fight a duel with some dangerous weapon. We do not find this in the indictment, and the variance is as apparent as it is substantial.
However courts are actuated by the strong ties of duty and inclination, to enforce the laws against the unchristian and murderous practice of duelling, and every preceding step that leads thereto, they have a more transcendent duty to perform. The sacred obligations of an oath or affirmation, binds them to administer justice agreeably to the known law of the land. To be extremely cautious how they break down or encroach on the great bulwarks which the wisdom of ages has with much care and labour erected as the best security of a nation of freemen. And they should ever bear in mind, that it is better that nine guilty persons should escape punishment, than that one innocent person should be condemned. On this view of the subject, I am of opinion that the indictment against Thomas Gibbons should be quashed.
Southard J.
This is an indictment under the 56th section of the act for the punishment of crimes. Pat. 218. The offence charged, receives its form and character, from the words of that section, and they must be our guide in forming our judgment upon this motion. It reads thus. “ If any person shall, by word, message, letter or any other way, challenge another to fight a duel, with a rapier, or small sword, back sword, pistol or other dangerous weapon, or shall accept a challenge,” &c. In com*paring the indictment with it, we will bear in mind, that being grounded upon a statute, it must, by express words, bring the offence within the substantial description made in the statute; that the circumstances, there mentioned, to make up the offence, cannot be supplied by the general conclusion, “ against the form,” &c.; and that although the fact itself be within the statute, and it might so appear upon the evidence; yet if it be not so alleged in the indict *61 ment, the defendant must not be convicted and sentenced upon it. 2 Hale 170,336. 2 Sir. 904. These admit of no exception, and the books contain many cases and illustrations arising out of them. We must bear in mind also, that we are not so to decide, as to have a defendant convicted, who only intended to commit the crime specified, but did not commit it. The intention to murder, or commit perjury can never he in dieted and punished, as the crimes of murder and perjury themselves. The intention to challenge can never be indicted and punished as the crime of challenging.
The operative words of this 56th section are, “ shall challenge another.” An indictment upon it must expressly charge the offence of challenging. As in forgery and perjury, it is necessary to set out the fact committed constituting the crime, and allege in the one case, that the accused did falsely make, forge, &c. and in the other, that he committed wilful and corrupt perjury; so is the same course necessary in the present instance. There must be an allegation that the defendant did challenge. It is never sufficient to state the facts from which we may infer a crime. The jury must itself aver, not the existence of the facts alone, but of the crime also. In criminal matters, neither grand or petit juries give a finding like a special verdict, and leave the court to pronounce the law, arising upon it.
Upon inspecting this indictment, I think it will appear to be defective, in this material allegation. It merely states, in substance, that the defendant wrote the paper set forth in it, intending it to be a challenge, and that he sent and offered it as such.
But there is another, and to my mind, not less conclusive view of this matter. The indictment does not shew, even by fair inference from the facts stated, that the letter which is called the challenge, was ever received by, or the contents made known to, the person intended to be challenged. It was “ sent and offered.” This is not enough. The crime is, challenging another; *the indictment should shew that the challenge was perfected; that some person was challenged. A man may resolve to challenge another; he may threaten to do it; he may write a letter for the *62 purpose; he may even' send the letter; yet the offence -may not be completed. In order that one person may challenge another, it is necessary that that other should be challenged. The two things exist inseparably together. What then makes a man challenged ? I answer, the knowledge of the fact, that he is called to fight. A challenge, written in the most fashionable and technical language of the modern school of honour, but never sent, cannot affect him. If it be written and sent, nay even ■shewn and offered to him, if not received, nor the contents explained, it will have no operation upon him. But if it be received, or he is informed of the contents, when it is shewn and offered, he is then challenged ; he is called, and he understands that he is called, to fight; his knowledge fixes the fact, and completes the offence. It is an offence composed of the forming, sending, and offering, on the one side; and receiving, or, knowing the contents, and then rejecting, on the other. This is the only intelligible idea that I can form of the statutary expression, “ if any person shall challenge another.” The next section of this same law (which incorporates 9 Geo. 1 cap. 22. 27 Geo. 2 c. 15. 30 Geo. 2 c. 24.) affords an inference favourable to this construction. It prescribes the punishment for sending threatening letters, and the difference of the phraseology is worthy of remark. It is not threatening by letter; the guilt is completed by the sending, even though it be not received. 2 East, 1124.
Whether the legislature intended the consequences which will result from my construction of this section, is certainly doubtful. They probably intended to punish a deliberate effort to commit murder; and did not mean that the guilt or innocence of the accused, should depend upon the accidental circumstance of the challenge being received or rejected: a circumstance in no way connected with his moral turpitude; nor in many cases at all depending upon his will. But if so, the phraseology is unhappily selected; and the plain and obvious meaning of the words, is a much safer guide to us, than any conjectures about their intention.
If I am correct in my view of the law, this indictment must be quashed. It does not aver that the defendant *63 challenged Col. * Ogden; it does not appear from it, that he ever received, or was informed of the contents of the paper which was sent and offered to him. He might, perhaps have thought, that he had many reasons for rejecting a letter from Mr. Gibbons, without either knowing or inquiring into the object. And if he did so, he was not challenged.
The view which I take of this case, precludes the necessity of examining that part of the indictment, relacing to the weapons for the fight: and I purposely avoid expressing an opinion whether the challenge must in words, name the weapons, or nature of the conflict intended ; or whether the writing set forth amounts to a challenge under the statute; or whether it is drawn according to the fashion of the times. These are questions more fitly reserved for another occasion.
It will also be perceived, that I rest on ground altogether distinct, from what relates to carrying a challenge, which I understand is the subject of another indictment, now before the court. The statute relating to it, is subject to a different construction.
After the opinion of the court was pronounced, the indictment was returned to the files of the Oyer and Terminer in Essex, and it is understood, that it has not been further prosecuted.

 State vs. Price, 6 Hal. 209.