343 So.2d 913 (1977)
Devon Dale BIENZ, Appellant,
v.
STATE of Florida, Appellee.
No. 75-1889.
District Court of Appeal of Florida, Fourth District.
March 11, 1977.
*914 Richard L. Jorandby, Public Defender, Frank B. Kessler, Asst. Public Defender, and Edward M. McGehee, Legal Intern, West Palm, Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Anthony C. Musto, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Judge.
The appellant entered into a negotiated plea of guilty as to breaking and entering with intent to commit a felony to wit: grand larceny, contrary to Florida Statute 810.02. The trial court accepted the negotiated plea and placed the appellant on probation for three years. One month later, the appellant was charged with a violation of one of the conditions of his probation, specifically, condition 7 of his probation order, which stated that:
You will promptly and truthfully answer all inquiries directed to you by the Court or the Probation Supervisor, and allow the Supervisor to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he may give you.
Pursuant thereto, a hearing was held, and the judge below ordered the probation revoked, and the appellant returned to jail. We disagree and reverse.
The salient facts are that the appellant's probation supervisor, being dissatisfied with his (the appellant's) behavior, subsequent to the judge's order of probation, required the appellant to enter a Halfway House program, required him to reside within that program, required him to follow all the rules and regulations of it, and to remain there until such time as he had the probation supervisor's permission to leave. Thereafter, the appellant obediently went to the Halfway House, with the strong admonition from his probation supervisor that he "... follow the rules and regulations of the program," and upon arrival was informed by the residence director that he was "free to leave at any time." Moreover, he was furnished with a copy of the rules of the facility, which he had to sign a receipt for, which said rules included the following statement:
If any task you are asked to do here seems menial or demeaning, feel free to leave.
Apparently, the appellant was not a model inmate, not very cooperative, and his treatment coordinator at the program described instances involving the appellant breaking several of the rules. This unsatisfactory course of conduct eventually resulted in the coordinator instructing the appellant to wear diapers on the outside of his pants because, in the words of the therapist coordinator:
"... his attitude reflected the actions of a baby, and because of that, as a learning experience for himself, he would wear a diaper... . At that counselling session, I told him that that would be his learning experience. If he chose not to accept it, he would have to leave the facility.
Accordingly, at 10:00 P.M., on the same day as the command that he wear diapers, the *915 appellant left the facility, and called his probation officer the next morning to report that he had done so, because he did not want to suffer the humiliation of wearing them. Notwithstanding this unsolicited report of his actions, coupled with his immediate voluntary visit to his probation supervisor, on the same day, he was immediately re-arrested, charged with violating condition 7 of his probation, and found guilty of violating said probation "in that he did leave the program without permission (of his probation supervisor)."
There was hearsay testimony at the probation violation hearing about the appellant's behavior, both before he went to the Halfway House, and after he got there, which may well have justified a revocation of his probation and influenced the judge; however, the record reflects that the charge against him, and the order resulting therefrom, concerned themselves solely with the fact that the appellant had left the Halfway House without his supervisor's permission.
We cannot agree with the lower court's decision. The probation supervisor's instructions were that he obey all rules and regulations of the Halfway House. One such, in writing, provided that if he was asked to do anything "demeaning" he could leave. It is not the function of this Court to probe the Freudian recesses of a psychotherapist's mind, if, indeed, it could ever be done; suffice it to say that a command from a therapist that an adult male wear diapers in public would certainly be demeaning in the minds of, so called, reasonable men. Certainly the appellant found it so, and quit the program as a result. The rules and regulations of the institution, which his probation supervisor had instructed him to follow, permitted the appellant to do as he did, and he cannot now be faulted for doing it. It is true that the more prudent course for the appellant to follow would have been to notify his supervisor of his intention to depart the program before he did so, but in the light of the repeated statements from the Halfway House personnel that he could leave at any time, we cannot argue that this single act complained of, was, in itself, a probation violation. Had he left and failed to report his departure, then we might be otherwise disposed; however, he voluntarily reported his departure in less than 24 hours and thereafter, on the same day, voluntarily reported to his probation supervisor's office. Not surprisingly, prior decisions involving such bizarre incidents are sparse; however, we note the case of Kominsky v. State, 330 So.2d 800 (Fla. 1st DCA 1976), wherein the court held that an 8:00 P.M. to 6:00 A.M. curfew was "... so harsh that it will counteract the concept of rehabilitation through the means of probation." We cannot suppose that obedience to a command to wear diapers is any less harsh.
Under the circumstances, we find it error for the judge to conclude that the appellant was guilty of violating his probation, by leaving the program without permission, and we do so, without the necessity of considering whether or not the probation supervisor had the necessary authority, on his own, to commit the appellant to such an institution in the first place.
Reversed.
MAGER, C.J., and CROSS, J., concur.