490 So.2d 123 (1986)
Arthur GOLDSCHMITT, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1649.
District Court of Appeal of Florida, Second District.
May 9, 1986.
Rehearing Denied June 26, 1986.
*124 Elliott C. Metcalfe, Jr., Public Defender, and Adam Tebrugge, Asst. Public Defender, Sarasota, for appellant.
Jim Smith, Atty. Gen., Tallahassee, William I. Munsey, Jr., and James Young, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(A), we have accepted this appeal directly from the County Court of Sarasota County.
Appellant, Arthur Goldschmitt, was convicted of driving under the influence of alcohol to the extent his normal faculties were impaired (D.U.I.). Goldschmitt appeals the trial court's order placing him on probation and requiring as a special condition of probation that he affix to his personal vehicle a bumper sticker reading, "CONVICTED D.U.I.  RESTRICTED LICENSE."[1]
We first consider whether section 316.193(4)(a), Florida Statutes (1985), permits the imposition of this or any other special conditions of probation. Goldschmitt urges that the statute authorizes probation for first-time D.U.I. offenders solely to ensure compliance with the concomitant statutory provision that the offender perform fifty hours of community service. Appellee responds that while the community service condition is a special, additional penalty created by the legislature, D.U.I. probation otherwise is no different than *125 any other form of probation.[2] We agree. Section 948.03(4), Florida Statutes (1985), which permits the sentencing court to fashion special conditions of probation, does not distinguish between felony, misdemeanor, and criminal traffic offenses, or between county and circuit courts.
Goldschmitt's argument that the bumper sticker constitutes a judicially developed, new penalty finds additional basis in the fact that this particular condition has become standard for all first-time D.U.I. offenders sentenced by two of the county's four judges. We would be quicker to accept his argument if we could be persuaded that any of the judges felt duty bound by local custom or rule to require the sticker despite their personal desire to the contrary. However, this obviously is not the case since half the local judiciary disdain the use of the sticker. While we are skeptical of special probation conditions imposed across-the-board, as opposed to being tailored to the needs and circumstances of the individual probationer, we cannot say that a judge may not impose a special condition of probation any time he or she chooses if that special condition otherwise is lawful.[3] Those who do require the bumper sticker apparently are of the opinion the sticker serves some useful purpose and that every first-time offender should have one.
Next, we turn to the various constitutional objections raised by Goldschmitt. First, he advances the theory that the trial court has infringed upon his first amendment rights by forcing him to broadcast an ideological message via the bumper sticker. His principal authority for this proposition is Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), wherein a New Hampshire Jehovah's Witness found objectionable and taped over the "Live Free or Die" motto on his automobile license plate. Suffice it to say we agree with appellee that the message involved in the present case is "no more ideological than a permit to park in a handicapped parking space" as required by section 320.0848, Florida Statutes (1985). Further, in Wooley v. Maynard, the issue was whether New Hampshire's interest in broadcasting its state motto sufficiently overrode the defendant's objections to the motto that criminal penalties could be imposed for defacing the tag. Here, the criminal behavior has already been committed prior to the requirement that the message be displayed as a form of penance and a warning to other potential wrongdoers.
Goldschmitt's second constitutional argument is that the bumper sticker constitutes cruel and unusual punishment and is therefore violative of the eighth amendment. He likens the sticker to the pillory of colonial times, a form of publicly suffered punishment that most would agree is cruel and unusual by modern standards. See, e.g., Hobbs v. State, 133 Ind. 404, 32 N.E. 1019 (1893); State v. Moilen, 140 Minn. 112, 167 N.W. 345 (1918); State v. Gedicke, 4 N.J.L. 53 (Sup.Ct. 1881). However, the differences between the degrading physical rigors of the pillory and a small strip of colorful adhesive far outweigh the similarities. The mere requirement that a defendant display a "scarlet letter" as part of his punishment is not necessarily offensive to the Constitution.
The deterrent, and thus the rehabilitative, effect of punishment may be heightened if it "inflicts disgrace and contumely in a dramatic and spectacular manner." United States v. William Anderson Co., Inc., 698 F.2d 911, 913 (8th Cir.1983). The court in William Anderson expressed approval of behavioral sanctions imposed as conditions of probation for certain white-collar criminals, including speeches before civic groups on the evils of price fixing. *126 "Measures are effective which have the impact of the `scarlet letter' described by Nathaniel Hawthorne or the English equivalent of `wearing papers' in the vicinity of Westminster Hall like a sandwich-man's sign describing the culprit's transgressions." Id. And, in United States v. Carlston, 562 F. Supp. 181 (N.D.Cal. 1983), a defendant convicted of tax evasion was ordered to purchase computers and teach their use to probationers and parolees, the court noting that by association with street criminals he would be "constantly reminded that his conduct was legally and socially wrong."[4] 562 F. Supp. at 185. Appellee refers to this philosophy, in the context of the present case, as "Pavlovian conditioning."
Of course, such innovative dispositions can be carried to extremes which might offend constitutional standards. In Bienz v. State, 343 So.2d 913 (Fla. 4th DCA 1977), a probationer was ordered into a halfway house with directions to obey all instructions. A supervisor accused him of behaving like a baby and directed him to wear diapers over his regular clothing. While the case was resolved on other grounds, the court commented: "[S]uffice it to say that a command ... that an adult male wear diapers in public would certainly be demeaning in the minds of so-called reasonable men ... not surprisingly, prior decisions involving such bizarre incidents are sparse." Bienz, 343 So.2d at 914. On the other hand, the requirement that a purse snatcher wear taps on his shoes whenever he left his residence was approved in People v. McDowell, 59 Cal. App.3d 807, 130 Cal. Rptr. 839 (1976), despite the defendant's plea that this was tantamount to a sign saying "I am a thief."
In the final analysis, we are unable to state as a matter of law that Goldschmitt's bumper sticker is sufficiently humiliating to trigger constitutional objections or, perhaps more to the point, that the lower court's belief that such a sticker is "rehabilitative" is so utterly without foundation that we are empowered to substitute our judgment for its.[5]
Accordingly, we affirm the judgment and order of probation of the trial court.
GRIMES, A.C.J., and SCHOONOVER and HALL, JJ., concur.
NOTES
[1] The record before us affords some degree of confusion whether the bumper sticker is intended as a condition of probation, or as a condition of obtaining the work permit authorized by section 322.282, Florida Statutes (1985). If Goldschmitt had not desired to drive on a restricted basis during the period of suspension of his license pursuant to section 322.28(2)(a)(1), Florida Statutes (1985), the trial court apparently would not have included the bumper-sticker condition in the order of probation. However, this may be a distinction without a difference. The bumper sticker is entirely useless unless Goldschmitt plans to drive. Furthermore, we find no statutory impediment to the requirement of some reasonable quid pro quo for the award of a work permit. Rather, this seems to be left to the discretion of the sentencing court. §§ 322.25(7) and 322.261(5), Fla. Stat. (1985).
[2] One additional distinguishing feature of probation for the first-time D.U.I. offenders is that it is mandatory, whereas probation generally is but a matter of grace. Robinson v. State, 442 So.2d 284 (Fla. 2d DCA 1983).
[3] For example, the condition should bear some relationship to the nature of the offense of conviction and should have some reasonable rehabilitative basis. Rodriguez v. State, 378 So.2d 7 (Fla. 2d DCA 1979).
[4] The federal courts have receded from United States v. William Anderson Co., Inc., to the extent they have held that 18 U.S.C. § 3651 does not authorize payment of monetary contributions other than as restitution to aggrieved parties. See, e.g., United States v. John Scher Presents, Inc., 746 F.2d 959 (3d Cir.1984); United States v. Missouri Valley Construction Co., 741 F.2d 1542 (8th Cir.1984); United States v. Wright Contracting Co., 728 F.2d 648 (4th Cir.1984). However, we believe the underlying premise of behaviorial sanctions remains valid.
[5] Initially we were concerned by the possibility that innocent persons might be punished by the bumper sticker, insofar as appellant's vehicle might be owned or operated by others. However, at oral argument the parties advised that the bumper stickers come equipped with a special Velcro strip that enables the "CONVICTED  D.U.I." message to be obscured when persons other than the probationer are using the vehicle.