606 So.2d 652 (1992)
Charles F. LINDSAY, Appellant,
v.
STATE of Florida, Appellee.
No. 91-0532.
District Court of Appeal of Florida, Fourth District.
September 16, 1992.
*653 Norman A. Green, Vero Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and James J. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
Peter Birch of Birch and Murrell, West Palm Beach, Robert Augustus Harper, Jr., Tallahassee, and George Tragos, Clearwater, for amicus curiae Florida Ass'n of Criminal Defense Lawyers.
FARMER, Judge.
The County Court for Indian River County has certified the following question as one of great public importance:[1]
Is a condition of probation requiring a probationer to consent to placing and paying for a "DUI ad in the Vero Beach Press Journal newspaper" consisting of that probationer's picture (mug shot), name and the caption "DUI-Convicted" violative of said probationer's rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States and/or Article I, Sections 2, 9, 17, and 23 of the Florida Constitution? [sic]
We have jurisdiction and answer the question "no", with the following explanation.
The facts are not disputed. Lindsay was charged with driving under the influence of alcohol under section 316.193, Florida Statutes (1989), after he ran into the rear of an Indian River County Sheriff's patrol car. The charging document states that he had a blood-alcohol level of .18 percent (from a breathalyzer test). The arresting officer seized an open can of cold beer at the scene, which had been thrown from the vehicle, and another unopened can in the vehicle. He described Lindsay as being "red-faced with a strong odor of alcohol on his breath and person." He added that his speech was slurred and his eyes were bloodshot.
Lindsay pleaded nolo contendere. At the sentencing hearing, his lawyer argued that he had no prior record and that the event was an isolated "indiscretion". He said that his family had "suffered through this since then" and that he had already completed the DUI school.[2] The school apparently ordered Lindsay to undergo some counseling, the nature or purpose of which is not apparent from the record.[3] His lawyer *654 asked for the minimum mandatory sentence.
The trial court thereupon sentenced Lindsay to probation for a period of 12 months, required him to do 50 hours of community service, suspended his driver's license for a period of one year, and imposed as a condition of probation that he "place a DUI news ad in the Vero Beach Press Journal within 30 days." At that point his attorney objected to the DUI ad saying: "(Indiscernible) cruel and unusual punishment and reserve the right to appeal (Indiscernible)." The judge responded by giving some instructions on how to go about submitting the ad, the cost for which ($51) is to be borne by Lindsay.
One month later, after a notice of appeal had been timely filed, the trial judge entered an order certifying the above question and attached to that order a copy of a form of the DUI ad used in a previous case. He said that this defendant was the first to have appealed this condition of probation. The judge has apparently imposed this condition on other probationers for the same offense but does so selectively rather than routinely.
Section 316.193(2), Florida Statutes (1991), prescribes a penalty of a fine from $250 to $500 and imprisonment for up to 6 months for a first conviction of the DUI offense. Moreover, section 316.193(6)(a) provides, in addition to the fine and imprisonment, that:
(a) For the first conviction thereof, the court shall place the defendant on probation for a period not to exceed 1 year and, as a condition of such probation, shall order the defendant to participate in public service or a community work project for a minimum of 50 hours. * * * However, in no event may the total period of probation and incarceration exceed 1 year.
Section 948.03, Florida Statutes (1991), deals generally with the conditions the court may impose as a component of the probation, saying in pertinent part as follows:
(1) The court shall determine the terms and conditions of probation * * * and may include among them the following, that the probationer * * * shall:
(a) Report to probation and parole supervisors as directed.
(b) Permit such supervisors to visit him at his home or elsewhere.
(c) Work faithfully at suitable employment insofar as may be possible.
(d) Remain within a specified place.
(e) Make reparation or restitution to the aggrieved party for the damage or loss caused by his offense in an amount to be determined by the court. The court shall make reparation or restitution a condition of probation, unless it determines that clear and compelling reasons exist to the contrary. If the court does not order restitution, or orders restitution of only a portion of the damages, as provided in s. 775.089, it shall state on the record in detail the reasons therefor.
(f) Support his legal dependents to the best of his ability.
(g) Make payment of the debt due and owing to the state under s. 960.17, subject to modification based on change of circumstances.
(h) Pay any attorney's fees and costs assessed under s. 27.56, subject to modification based on change of circumstances.
(i) Not associate with persons engaged in criminal activities.
(j) 1. Submit to random testing as directed by the correctional probation officer or the professional staff of the treatment center where he is receiving treatment to determine the presence or use of alcohol or controlled substances.
2. If the offense was a controlled substance violation and the period of probation immediately follows a period of incarceration in the state correction system, the conditions shall include a requirement that the offender submit to *655 random substance abuse testing intermittently throughout the term of supervision, upon the direction of the correctional probation officer as defined in s. 943.10(3).
* * * * * *
(5) The enumeration of specific kinds of terms and conditions shall not prevent the court from adding thereto such other or others as it considers proper. The court may rescind or modify at any time the terms and conditions theretofore imposed by it on the probationer * * *.
(6)(a) If the court imposes a period of residential treatment or incarceration as a condition of probation or community control, the residential treatment or incarceration shall be restricted to [certain named facilities].
(b) It is the intent of the legislature that a county jail be used as the last available alternative for placement of an offender as a condition of probation. However, this shall not create a right of placement for the probationer, nor shall it restrict judicial discretion in ordering such treatment or incarceration. [e.s.]
The scope of the discretion given to trial judges under these statutes is breathtaking. Even a twelve-month term of incarceration may be imposed by the trial judge as a condition of probation on any non-capital offender, so long as the combined periods do not exceed the maximum period of the statutory penalty. And even if only probation is imposed, the offender may be told when and where to live and work, whom he cannot associate with, what substances he may not consume or use, and be required to submit his body to random testing for substance abuse. If all of these are not enough, the court may then impose any others that "it considers proper," including a requirement that he pay restitution to any victim of his criminal conduct.
Lindsay advances several arguments to make the case that this condition is unconstitutional: (1) it violates the primary purpose of probation, i.e. rehabilitation; (2) it bears no relation to the crime of driving while impaired by alcohol and causing property damage and instead requires the probationer to humiliate himself publicly; (3) it unreasonably interferes with his right to pursue employment and his right to choose where to live by making him a public figure of ridicule, and infringes on his right not to speak; and (4) it is arbitrary and capricious because it treats similarly situated offenders disproportionately. All of these deserve some discussion.
Before we do so, however, we pause to take notice of some widely known facts. In 1990, 44,529 people were killed in traffic crashes in the United States, 40% of which involved an intoxicated driver or occupant of the vehicle.[4] At the same time, there were 58,797 drivers involved in fatal crashes, in which 14,558 of the drivers were intoxicated. Id. In Florida, out of a total of 2,951 traffic fatalities in 1990, 1,365 were alcohol related.[5] These figures, of course, deal only with fatalities; the incidence of alcohol related, personal injury and property damage is much higher; those involving no injury or damage even greater still. The breadth of the problem is suggested by the fact that, in the same year in Broward, Palm Beach and Indian River Counties, 10,027 DUI offenders were referred for evaluation to the local DUI section 316.193(5) facilities.[6]
To say that driving under the influence of alcohol is a major problem in this state and district is to understate the obvious. As these statistics imply, the extent of the harm to society is both extensive and enduring. Indeed, as the legislature has said elsewhere:
The Legislature finds that the problem of chronic public intoxication has, in several areas of the state, reached such epidemic *656 proportions that it infringes on the legitimate and important social and economic interests of the general public.
§ 396.106(1), Fla. Stat. (1991). The facts revealed by the statistics thus undoubtedly informed the legislature when it constructed its DUI punishment laws.
The penalty facing the DUI offender is both unique and comprehensive. The trial judge has been given a multifaceted sentencing scheme that specifically includes both incarceration and fines, with mandatory probation, public service and counseling. It is thus obvious that the legislature intended that the trial judge individually tailor DUI sentences to punish and make the prospect of repeating this motor vehicle offense especially unpleasant to contemplate.
With that background, we turn to Lindsay's first argument, that the ad violates the rehabilitational purpose. We think that he assumes too much. Deciding that the primary purpose of probation is rehabilitation is not the same thing as making probation free from any punitive effect. Rehabilitation and punishment are not mutually exclusive ideas. They can co-exist in any single, particular consequence of a conviction without robbing one another of effect. In fact, it is difficult to imagine any condition of probation that does not have some punitive aspect to it.
The hope that the sinner will sin no more, that he will be rehabilitated, does not compel the conclusion that he is relieved of the obligation to do penance for his past offenses. At least the Florida legislature did not think so. In section 948.03(5), Florida Statutes (1991), it specifically authorized trial judges to impose a period of incarceration as a condition of probation. Section 316.193(6)(a) further prescribes that the total period of probation and incarceration may not exceed 1 year. Incarceration is surely one of the clearest expressions of punishment and, if appellant were correct in his essential premise, entirely antithetical to the purely rehabilitational purpose of probation.
As the court observed in Goldschmitt v. State, 490 So.2d 123 (Fla. 2d DCA), rev. denied, 496 So.2d 142 (Fla. 1986):
The deterrent, and thus the rehabilitative, effect of punishment may be heightened if it "inflicts disgrace and contumely in a dramatic and spectacular manner." United States v. William Anderson Co., Inc., 698 F.2d 911, 913 (8th Cir.1983). The Court in William Anderson expressed approval of behavioral sanctions imposed as conditions of probation for certain white-collar criminals, including speeches before civic groups on the evils of price fixing. "Measures are effective which have the impact of the `scarlet letter' described by Nathaniel Hawthorne or the English equivalent of `wearing papers' in the vicinity of Westminster Hall like a sand-wich-man's sign describing the culprit's transgressions." Id. And, in United States v. Carlston, 562 F. Supp. 181 (N.D.Cal. 1983), a defendant convicted of tax evasion was ordered to purchase computers and teach their use to probationers and parolees, the court noting that by association with street criminals he would be "constantly reminded that his conduct was legally and socially wrong." 562 F. Supp. at 185. Appellee refers to this philosophy, in the context of the present case, as "Pavlovian conditioning."
490 So.2d at 125-26. So the idea that this condition of probation is improper simply because it is punitive is belied by both the statute and the cases.
We skip next to the third reason argued, namely that it interferes with the constitutional rights of speech and the freedom to live and work. To deal with this contention, we turn again to Goldschmitt, which is unusually apt in its application to this case. The issues faced there by the Second District are virtually indistinguishable from the ones that we face today. There the defendant was convicted of the same DUI offense. He too was sentenced to probation, and one of the conditions was that he affix a bumper sticker, reading "CONVICTED D.U.I.  RESTRICTED LICENSE", to any vehicle driven by him. He *657 raised many of the same contentions argued here, among them that the condition violated certain fundamental constitutional rights, i.e. free speech and the proscription against cruel and unusual punishment.
As noted in Goldschmitt, a trial court has the power to impose any valid condition of probation that serves a rehabilitational purpose. Hines v. State, 358 So.2d 183 (Fla. 1978). We ourselves said in Wiggins v. State, 386 So.2d 46 (Fla. 4th DCA 1980), that even constitutional rights can be abridged by conditions of probation if the conditions "are reasonably related to the probationer's past or future criminality or to the rehabilitative purposes of probation." 386 So.2d at 47. See also Larson v. State, 572 So.2d 1368 (Fla. 1991) (probation condition that burdens exercise of constitutional right, though permitted, should be given special scrutiny). Even the first amendment right of free speech may be limited by an otherwise valid condition of probation. Rodriguez v. State, 378 So.2d 7 (Fla. 2d DCA 1979). Thus the fact that a valid condition of probation burdens constitutional rights is no basis by itself to set it aside.
We turn next to the second basis argued, namely that there is no reasonable relationship between the condition and Lindsay's criminal conduct. He says that "[a]n ad in the newspaper has nothing to do with either driving a vehicle or being under the influence of alcoholic beverages * * *." The only purpose served by the ad, he contends,
"is additional punishment by noticing [his] conviction in such a way that more people in the local community are going to know that he was convicted of a criminal offense, namely, Driving under the Influence."
At the same time, he argues that this condition invades his privacy by making him a reluctant public figure and then exposing him to ridicule and humiliation. It seems to us a fair characterization of his argument to say that in one breath he argues that the condition is unrelated or ineffective to criminal rehabilitation, but in the next one that it may be too well suited to its purpose because he will feel the sting of its use. There is an inherent irony that the stronger he makes the case for humiliation and ridicule, the more he tacitly concedes that it is reasonably appropriate to its penal ends.
Nevertheless, recurring to Goldschmitt, we can again find no basis here to overturn the judge's decision. The question whether there is a reasonable relationship between criminal conduct and a condition of probation is one of fact, or at least mixed fact and law. As in all such matters, the trial judge decides the factual basis for the condition.
Lindsay's argument is that this condition is unreasonable and unrelated as a matter of law. If his logic were applied generally, we would have to concede that there is no relation between drinking and driving. It is certainly true that the one can be done without the other, but as experience shows human conduct can tie them together. Driving may not have anything to do with newspaper advertising, but the humiliation arising from the publicizing of the fact of a conviction does have an apparent logical connection with deterring criminal conduct. At least, Lindsay did not adduce any evidence to the contrary. As the court said in Goldschmitt:
In the final analysis, we are unable to state as a matter of law that [this] bumper sticker is sufficiently humiliating to trigger constitutional objections or, perhaps more to the point, that the lower court's belief that such a sticker is "rehabiltative" is so utterly without foundation that we are empowered to substitute our judgment for its.
490 So.2d at 126.
We last address Lindsay's contention that the condition is arbitrary and capricious because it fails to treat similar offenders proportionately. Actually, there are two components to his attack. Initially, he says that a first-time DUI offender is denied due process in this judge's courtroom because he has no way of knowing whether the judge will select him to bear this particular condition of probation. Then, he argues that those who must endure *658 this condition are treated more harshly than those who do not.
Lindsay apparently ignores the fact that those first-time DUI offenders who receive incarceration are treated more harshly than those who receive merely probation. Yet no one would suggest in this day that it is a denial of equal protection or due process to jail one person but grant probation to the next one who was convicted for the same offense. Even the sentencing guidelines allow for some inconstancy of result in constructing different penalties for similar offenders. Indeed it is the very notion of individualized punishment for criminal offenders that creates some uncertainty for every defendant at sentencing.
Hence the mere fact that Lindsay must do the DUI ad while the next offender does not is no basis to strike down all impositions of this condition. As the facts in this case show, there was some basis to deem this "first" DUI offense more than a mere "indiscretion". Lindsay was so impaired by alcohol that he ran his vehicle into the rear of a police car. His blood alcohol level was very high. Worse still, he continued his alcohol consumption after he took control of his vehicle and operated it with an open can of beer at hand. As in Goldschmitt, we are simply unable to say that the trial judge's decision to add this particular condition of probation is so "utterly without foundation" that we can tell him he was wrong.
Moreover, the statistics quoted above betray another truth that we assume the trial judge knew and considered. An alarming number of the DUI defendants are repeat offenders. In Indian River County in 1990, more than 25% of the DUI offenders were recidivists.[7] In crafting an appropriate penalty for a first time DUI offender, we believe that the legislature intended that the trial judge consider the peculiar facts of this first offense, as well as the high incidence of multiple DUI offenders, and tailor special conditions of probation to discourage a repetition of the act. As we hinted before, publicizing the fact of conviction may tend to make some offenders less likely to repeat the offense. At least, human nature being what it is, it appears that way to us. Lindsay has not shown otherwise.
Finding no basis to disturb Lindsay's conditions of probation, we answer the certified question in the negative and affirm the sentence.
CERTIFIED QUESTION ANSWERED AND SENTENCE AFFIRMED.
HERSEY and GUNTHER, JJ., concur.
NOTES
[1] See Fla.R.App.P. 9.030(b)(4)(A) and 9.160.
[2] See § 316.193(5), Fla. Stat. (1991).
[3] One difficulty we have with this record is that the "transcript" was prepared from an audio tape recording of the sentencing hearing. Much of the tape is apparently inaudible, as the transcript is filled with the notation "(Indiscernible)" by the transcriber. Her certificate says that it constitutes "to the best of my ability a true record of the electronically recorded proceedings." If Indian River County is going to do justice to its citizens, it will have to improve on this system, which is often inadequate to its purpose. In this instance, however, neither party claims any prejudice from these ellipses, and so we leave them to our imaginations.
[4] United States Department of Transportation, National Highway Traffic Safety Administration, "Drunk Driving Facts" (July 1991).
[5] Florida Department of Highway Safety & Motor Vehicles, "1990 Florida Traffic Crash Facts."
[6] Florida Supreme Court, Office of the State Court Administrator, DUI Programs Coordination Office, 1990 Quarterly Referral Reports.
[7] See fn. 6, above.