ALTENBERND, Judge,
dissenting.
The state appeals an order suppressing a blood alcohol test in a DUI manslaughter case. The test was requested by a sheriff’s deputy after the defendant’s treating physician told the deputy that the defendant had been drinking. The trial court suppressed this evidence as a violation of section 395.017, Florida Statutes (1989). Because the evidence was not obtained in violation of the fourth amendment or its counterpart, article I, section 12, of the Florida Constitution, I would reverse the suppression order.
On January 15, 1991, Starla Buchanon was driving east on Interstate 4 in eastern Hillsborough County at 11:10 p.m. She was driving her car in the right lane and drove off the south edge of the road. When she pulled back onto the highway, she lost control, crossed the median, and struck an oncoming car head-on. The driver of the other car died at the scene. Ms. Buchanon suffered serious injuries and was taken by emergency vehicle to Lake-land Regional Medical Center.
A traffic homicide investigator with the Hillsborough County Sheriff’s Department arrived at the scene of the accident after Ms. Buchanon was taken to the hospital. His initial investigation at the scene of the accident developed the facts described in the preceding paragraph. The deputy did not know why Ms. Buchanon had lost control of her car.
As soon as the deputy finished at the scene of the accident, he went to the hospital to check on Ms. Buchanon. He located her treating physician and asked him about the injuries that she had sustained. The doctor told the deputy that Ms. Buchanon had been to surgery and was in the recovery room. He volunteered that it appeared *469 the patient had been drinking before the accident. He told the deputy that a diagnostic test had been positive for alcohol. Based on this information and pursuant to section 316.1933(1), Florida Statutes (1989), the deputy requested a blood test. This test was taken three and one-half hours after the accident and revealed a blood alcohol content of .12% at that time. The trial court suppressed the results of this test.
If this deputy had the constitutional right to ask the treating physician about the driver and to listen to the information provided by that physician, I think it is clear that he had probable cause to request a blood test for alcohol. The deputy was investigating a fatal motor vehicle accident. He was preparing a homicide report to be filed with the Department of Highway Safety and Motor Vehicles. See § 316.066, Fla.Stat. (Supp.1990). There was no obvious mechanical reason for the driver to have lost control of her car. If the driver was physically able to discuss the accident, the deputy had every logical and legal reason to question her about the accident. See § 316.062, Fla.Stat. (1989). Thus, the deputy quite properly checked with the treating physician to determine the status of the driver.
Intoxication is, unfortunately, a possible explanation for an accident that occurs late at night without apparent cause. See generally Lindsay v. State, 606 So.2d 652 (Fla. 4th DCA 1992) (over 46% of traffic fatalities in Florida in 1990 were related to intoxication). When the doctor, who had just performed surgery on the driver, stated that in his opinion the driver had been drinking, this deputy clearly had a reasonable and objective basis to believe that opinion — with or without a diagnostic test. See generally Jackson v. State, 456 So.2d 916, 918 (Fla. 1st DCA1984) (“Probable cause exists under section 316.1933(1) to order a blood test if the officer, based upon reasonably trustworthy information, has knowledge of facts and circumstances sufficient to cause a person of reasonable caution to believe that the suspect driver was under the influence of alcoholic beverages at the time of the accident and caused the death or serious bodily injury of a human being.”). The doctor’s statement justified the deputy’s request for a blood test.[1]
Section 395.017(3) merely provides, subject to certain exceptions not applicable in this case, that patient records of a licensed hospital “shall be confidential and shall not be disclosed without the consent of the person to whom they pertain.” This statute does not justify the use of the exclusionary rule as a fourth amendment remedy to suppress the results of a blood test ordered by a law enforcement officer.
First, the test which was suppressed under this statute is itself exempt from the statute. Blood tests ordered pursuant to section 316.1933 are available to a law enforcement officer “notwithstanding any provision of law pertaining to the confidentiality of hospital records or other medical records.” § 316.1933(4), Fla.Stat. (1989).
Second, the hospital did not disclose the patient’s records in this case. A treating physician stated his medical opinion and then orally based his opinion, at least in part, on information he had seen in a hospital record. Thus, I am not convinced that anyone violated this statute in this case.
Third, assuming that someone violated section 395.017(3), it was the private physician. The state, through the deputy, did not improperly disclose patient records. This is not a case involving a deputy who sneaks a peek at confidential hospital records. This deputy is just doing his job and *470 asking the basic questions needed to file a homicide report.
I have found no case suppressing state evidence because of information volunteered by someone’s treating physician. In State v. Wenger, 560 So.2d 347 (Fla. 5th DCA1990), the court suppressed a blood test that had been performed for medical purposes. The test was suppressed because the state attorney obtained a copy of the test by issuing a subpoena without proper notice. Without regard to whether I agree that suppression was a necessary remedy in Wenger, the case is at least distinguishable because it involved misconduct by an officer of the state.
Although not argued by the parties, I note that section 455.241(2), Florida Statutes (Supp.1990), by virtue of an amendment in 1988, prohibits any health care practitioner from discussing a patient’s “medical condition” with any person other than the patient or his legal representative or other health care providers. I am not convinced that intoxication is a bona fide medical condition. If it is, any statutory violation in this case still concerns the voluntary statement of a private physician and not an abuse of state power by a law enforcement officer.
The results of this test have been suppressed only because the evidence giving the deputy probable cause to request the blood test was received from a treating physician at the hospital. If this accident had not been so serious, Ms. Buchanon would not have been taken to the hospital before the deputy arrived. He could have observed and questioned her at the scene of the accident. He could, and presumably would, have reached his own independent opinion that she had been drinking without relying upon the treating physician. It is troublesome that the results of this test are inadmissible because this drunk driver caused a serious, rather than a minor, accident.
I would reverse this order of suppression.

. Indeed, such a statement from the ambulance personnel or from other people experienced with automobile accidents would seemingly justify a request for a blood test under section 316.1933, Florida Statutes (1989). Cf. Cox v. State, 473 So.2d 778 (Fla. 2d DCA1985) (testimony of investigating officer, emergency room doctor, clerk, and technician was sufficient to support officer’s probable cause to believe defendant was under influence of alcohol to require blood test); White v. State, 492 So.2d 1163 (Fla. 1st DCA1986) (officer had no probable cause to order blood test where he did not smell alcohol on defendant’s breath or know specific circumstances causing accident, and did not know that paramedic smelled alcohol on defendant’s breath and that defendant told paramedic that he had drunk a couple of beers).