

# THE ATTORNEY GENERAL
## OF TEXAS

August 4, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Don R. Stiles                           Opinion No.   JM-762
Executive Director
Adult Probation Commission                  Re:  Constitutional validity of
8100 Cameron Road                           electronic monitoring of proba-
Suite 600, Building B                       tioners
Austin, Texas     78753

Dear Mr. Stiles:

You inform us that the Adult Probation Commission is considering
a proposal to permit the use of electronic monitoring devices as a
condition of probation.   The devices will be employed primarily to
monitor a probationer's compliance with curfew hours imposed by the
court.   Some of the monitoring systems require the probationer to wear
an electronic device attached to his or her body at all times; all
require the probationer to have access to a telephone in his or her
residence.    Concern about the constitutionality of this use of
electronic monitoring devices has prompted the following questions:

> 1.  Do probationers have any constitutionally
> protected interest which would prohibit the use of
> electronic monitoring in the home as a condition
> of probation over the objections of the [proba-
> tioner]?
>
> 2.  Do family members or cohabitants [of]
> probationers have any constitutionally protected
> interest which would prohibit the use of
> electronic monitoring in the home they share with
> probationers over their objections?
>
> 3.  Does the requirement of some systems that
> the probationer wear a device attached to his or
> her body at all times have any influence on the
> answers to questions 1 and 2?
>
> 4.  Does the requirement of some systems that
> an electronic monitoring device be attached to the
> telephone in the home have any influence on the
> answers to questions 1 and 2?

In our opinion, the employment of electronic monitoring devices
as a condition of probation does not violate a constitutionally

protected interest of the probationer or a third person residing in the probationer's home. Neither do we believe that the attachment of the particular devices you have described to either a probationer's body or a telephone in his home violates any constitutionally protected interest of the probationer or a third person residing in the probationer's home.

I.

In your request letter you describe three types of electronic monitoring systems under consideration. The first type of system is called an "active" monitoring system:

> Active monitoring. This requires that the probationer have a standard telephone in his home. A monitoring device is hooked up to the phone. The probationer wears a device that transmits signals which the monitor can detect within a certain small radius. The monitor is connected through the telephone line to a computer which is programmed with the schedule that the probationer has been ordered by the court to observe. Communication between the monitor and the computer shows whether the probationer is at home at the time he is supposed to be.

A fuller description of the active monitoring system was provided in a report recently issued by the Texas Criminal Justice Policy Council:

> The first type of these systems, referred to in the earliest literature as 'active' systems consists of a transmitter unit, a receiver-dialer unit, and a central office computer or receiver unit. A transmitter, which is strapped to the offender, broadcasts an encoded signal to the receiver located in the offender's home. The receiver is connected by the telephone to the central office computer or receiver unit. When the transmitter being worn by the offender is within range of the home receiver, the system indicates that they are at the residence. When the offender goes beyond the range of the receiver unit, i.e., leaves the home, the signal from the transmitter is not received and the system indicates absence. If the offender leaves home during an unauthorized period, in violation of their curfew, a violation report is generated. If, however, the offender leaves the home at a time they are authorized to do so, the times of arrival and departure are noted, but no violation report is generated.

J. Vaughn, <u>Electronic Monitoring of Offenders</u> 6 (July 1986) (prepared for Texas Criminal Justice Policy Council) (hereinafter cited as <u>Electronic Monitoring</u>).

The second type of device described in your letter are the so-called "passive" systems:

> Passive monitoring. This also requires a standard telephone and a monitoring device in the home. The device worn by the probationer does not send signals, but must be placed in the monitor when the central computer calls the probationer's home at random intervals during the periods when the probationer is ordered to be at home. The monitor verifies that the correct device has been used to respond to the call.

The Criminal Justice Policy Council report provided this description of passive monitors:

> A second type of unit utilizing telephone lines for communication has been referred to in the earlier literature as a 'passive' system. It consists of a central office computer, an encoder device, and a verifier box. The encoder device is worn either on the wrist or ankle by the offender. The computer is programmed to generate either random calls or to call at specific times to the offender's home. The offender is required to provide voice identification and then insert the encoder device into the verifier box, confirming their identity. The system will provide exception reports if the phone is not answered, if a busy signal is received, if an operator intercept message is detected, or if the offender fails to properly insert the encoder device into the verifier box.

<u>Electronic Monitoring</u>, <u>supra</u>, at 6. The report explained the difference between active and passive systems in terms of the amount of monitoring accomplished by each type of system. "Active" systems operate continuously and monitor the probationer from the moment the transmitter is within the range of the receiver. In contrast, "passive" systems are activated by the telephone calls from the central reception office and operate only for the duration of the telephone call. <u>Id.</u>

The third type of monitoring system under consideration does not require the probationer to wear any device at all but does involve the use of a telephone. A centralized computer makes telephone calls to the probationer's home at random times during the period in which the

probationer is required by the court's order to be at home. The probationer is directed to repeat selected words and phrases or to answer a series of questions. See Electronic Monitoring, supra, at 6. The probationer's voice is then electronically compared with a voice print previously supplied by the probationer.

As of July 1986, electronic monitoring systems of one type or another were in use in eight states. Electronic Monitoring, supra, (Appendix D). The state of California recently enacted a statute authorizing the use of electronic monitoring devices as part of a three-year home detention pilot project. Cal. Penal Code §1203.015 (West Supp. 1987). The Texas Legislature recently approved the employment of electronic monitoring devices in probation and parole programs, but its provisions affect probations granted or modified after September 1, 1987. Acts 1987, 70th Leg., ch. 1, §§7, 15, at 1, 14 (S.B. No. 215). This opinion does not address the constitutionality of the provisions of this legislation. It addresses only the general question of the constitutionality of electronic monitoring devices.

## II.

The Adult Probation Law states that the terms and conditions of probation may include, but are not limited to, those conditions expressly provided in the act. Code Crim. Proc. art. 42.12, §6(a). The courts are not limited to the conditions enumerated in the act but have wide discretion in setting reasonable conditions of probation. Macias v. State, 649 S.W.2d 150 (Tex. App. - El Paso 1983, no pet.). Conditions of probation should bear a reasonable relationship to the treatment of the accused and the protection of the public. Tamez v. State, 534 S.W.2d 686 (Tex. Crim. App. 1976); Macias v. State, supra. Whether the use of an electronic monitoring device bears a reasonable relationship to the treatment of a particular probationer and the protection of the public is a question of fact that cannot be determined in an Attorney General's Opinion. See generally Attorney General Opinion JM-307 (1985) at 5.

Your first question concerns whether a probationer has any constitutionally protected interest which will prohibit the use of electronic monitoring devices as part of his probation. It is well understood that, because of their special status, probationers are subject to limitations of their constitutional rights from which ordinary citizens are free. Macias v. State, 649 S.W.2d at 152. Any restriction placed upon these rights, however, can be justified only to the extent actually required by the legitimate demands of the probation process and necessary for the probationer's reformation and rehabilitation. Id.; see also Tamez v. State, 534 S.W.2d at 692.

In the Macias case, the court adopted the test articulated in United States v. Tonry, 605 F.2d 144, 150 (5th Cir. 1979), to

determine whether a condition of probation is unduly intrusive on constitutionally protected freedoms:

> The conditions must be 'reasonably related' to the purposes of the [Federal Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.

Macias v. State, 649 S.W.2d at 152. Whether it is reasonable to require a particular probationer to wear an electronic monitoring device as a condition of his probation requires an evaluation of the facts surrounding his illegal activity and his probation. See Attorney General Opinion JM-307 (1985). It is nevertheless possible to review the relevant authorities to determine whether the mere use of electronic monitors in the probation system impermissibly infringes upon a constitutionally protected interest of a probationer or a third person residing in the home of a probationer. Your questions raise issues under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. We will devote the bulk of our discussion to the issue of privacy in the probationer's home.

First Amendment Considerations

The First Amendment to the United States Constitution generally protects an individual's speech, associations, movement, travel, and religious beliefs from excessive governmental limitations. See also Tex. Const. art. I, §§6, 8, 27. A related concept is the right to travel interstate, derived from the privileges and immunities clause of the Fourteenth Amendment. See Edwards v. California, 314 U.S. 160 (1941). Although persons serving a probated sentence are entitled to enjoy these rights to a significant degree, the courts have consistently held that such rights may be limited to serve the purposes of probation. However, because of the preferred nature of these rights, courts critically evaluate probation conditions restricting them. See Cohen and Gobert, The Law of Probation and Parole, §5.10 (1983 and Supp. 1986) [hereinafter cited as Cohen and Gobert]. The interests which are implicated by your request are those relating to associations, movement, and travel.

The courts have concluded that conditions curtailing a probationer's associations with certain named persons does not impermissibly infringe upon the right of freedom of association. Tyra v. State, 644 S.W.2d 865 (Tex. App. - Amarillo 1982, no pet.). Conditions which prohibit any contact whatsoever between a probationer and a complainant have been upheld as reasonable conditions of probation. Pequeno v. State, 710 S.W.2d 709 (Tex. App. - Houston [1st

Dist.] 1986, no pet.). In appropriate cases, probation conditions imposing a curfew are reasonable, notwithstanding the limits they impose on a probationer's freedom of movement and travel. See Salinas v. State, 514 S.W.2d 754 (Tex. Crim. App. 1974). Conditions which require the probationer to remain in a specified area are valid. See, e.g., Miller v. State, 330 S.W.2d 466 (Tex. Crim. App. 1959). However, a condition which effectively banishes a probationer from a particular area is invalid. See Johnson v. State, 672 S.W.2d 621 (Tex. App. - Corpus Christi 1984, no pet.) (banishment from county). Also, it has been suggested that conditions limiting a probationer's associations could threaten the probationer's right of privacy if construed to extend to family members. Cohen and Gobert, supra, §6.16 (citing Roe v. Wade, 410 U.S. 113, 152-53 (1973)).

Given these permissible limitations, we are not persuaded that a probationer may object to the use of electronic monitoring devices on the grounds that it interferes with his freedom of association, movement, or travel. Electronic monitoring devices appear no more restrictive than a condition directly limiting movement; they simply provide greater assurance that the probationer is conforming his conduct to the limitations attached to his conditional liberty. Because the devices are incapable of monitoring conversations, we do not believe that they will affect a probationer's freedom of speech. The fact that the probationer may be required under some systems to utter particular words or phrases into a telephone does not change our opinion, provided the condition requiring this conduct otherwise serves the purposes of probation. Cf. United States v. William Anderson Co., Inc., 698 F.2d 911, 913 (8th Cir. 1982) (referring to terms of probation which required price-fixers to deliver speeches to civic groups about the evils of price-fixing), overruled on other grounds, United States v. Missouri Valley Constr. Co., 741 F.2d 1542 (8th Cir. 1984); United States v. Franks, 511 F.2d 25 (6th Cir.), cert. denied, 422 U.S. 1042 (1975) (requiring arrested defendant to submit voice exemplars violates no constitutional rights so long as underlying seizure of the person was proper).

## Privacy Considerations

The privacy interests of probationers and nonprobationers do not draw protection from a specific guarantee of the federal Constitution, but are instead protected by concepts derived from the various guarantees of the Bill of Rights and the Fourteenth Amendment, particularly the Fourteenth Amendment's concept of personal liberty. See Roe v. Wade, 410 U.S. 113 (1973). Some of these interests were addressed in our discussion of the First Amendment. Here, we will discuss that privacy interest which we believe is most directly implicated by the proposal to employ electronic monitoring devices in the probation system -- namely, the reasonable expectation of privacy a probationer may have with respect to the contents and happenings in his home. See generally Alderman v. United States, 394 U.S. 165 (1969).

The Fourth Amendment's ban on unreasonable searches and seizures has supported challenges to probation conditions requiring the probationer to undergo random searches. See also Tex. Const. art. I, §9.

In Tamez v. State, supra, the defendant was placed on probation after entering a plea of nolo contendere on a charge of possession of marijuana. One of the conditions of probation required the defendant to submit his person, residence and vehicle to a search by any peace officer at any time. The Court of Criminal Appeals invalidated the condition, stating it was too broad and too sweeping and infringed upon the probationer's rights under the Fourth and Fourteenth Amendments of the federal Constitution and article I, section 9, of the state constitution. 534 S.W.2d at 692. The condition did not serve the ends of probation and permitted harassing and intimidating searches totally unrelated to his prior conviction or rehabilitation. Id. An identical condition was invalidated by the Court of Criminal Appeals one year after the Tamez decision. Basaldua v. State, 558 S.W.2d 2 (Tex. Crim. App. 1977).

In the years following the Tamez and Basaldua decisions, the courts have exhibited a willingness to accept conditions of probation which require the probationer to undergo what are arguably limited searches and seizures. In Macias v. State, supra, the court approved a condition requiring a probationer who had pled guilty to a charge of delivery of a controlled substance to submit to weekly urinalysis tests administered by his probation officer. The court concluded that the taking of urine samples constituted a search but determined the condition was reasonably related to the purposes of probation under Texas law for three reasons. First, it served to dissuade the probationer from possessing illegal drugs. Second, it promoted his rehabilitation by providing the probation officer with means of determining whether rehabilitation was taking place. Finally, it protected society by deterring the probationer from engaging in unlawful drug activities and by giving the probation officer the ability to detect any such activity. 649 S.W.2d at 152-53. The court noted that the terms of the condition were not overly broad and unrestricted so as to permit the kind of intimidating and harassing searches condemned in the Tamez and Basaldua cases. See also Clay v. State, 710 S.W.2d 119 (Tex. App. - Waco 1986, no pet.) (upholding an identical condition of probation).

The earliest decision considering the constitutionality of electronically enhanced surveillance reflected the prevailing view that for there to be a search under the Fourth Amendment, the police must have physically intruded into a constitutionally protected area. In Olmstead v. United States, 277 U.S. 438 (1928), the Supreme Court held that the placement of an eavesdropping device on the defendant's telephone and the subsequent monitoring of his conversations did not constitute a search under the Fourth Amendment because the "wires are not part of his house or office, any more than are the highways along

which they are stretched." 277 U.S. at 465. The Court later upheld on similar grounds electronic eavesdropping upon conversations in a neighboring office by the use of a "detectaphone" placed against a common wall. Goldman v. United States, 316 U.S. 129 (1942). In Silverman v. United States, 365 U.S. 505 (1961), the Court ruled that eavesdropping by means of a "spike" microphone which penetrated a common wall constituted a Fourth Amendment search.

The Supreme Court's decision in Katz v. United States, 389 U.S. 347 (1967), ushered in a new era of Fourth Amendment analysis. In that case, the Court abandoned the "trespass" doctrine employed in the Olmstead and Goldman decisions, declaring that

> the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

389 U.S. at 351. The Court ruled that eavesdropping by way of an electronic listening and recording device attached to the exterior of a public telephone booth was a search for purposes of the Fourth Amendment, requiring government agents to obtain a search warrant in advance.

Justice Harlan, in a concurring opinion that was to eventually serve as a guide to other courts, added that the majority opinion of the Court established a twofold requirement -- first, that the person have exhibited an actual (i.e., subjective) expectation of privacy, and second, that the expectation be one that society is prepared to recognize as reasonable. 389 U.S. at 361. See California v. Ciraolo, 476 U.S. ___, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); Stewart v. State, 681 S.W.2d 774 (Tex. App. - Houston [14th Dist.] 1984, pet. ref'd).

In the years following the Katz decision, the Supreme Court considered the constitutional ramifications of surveillance accomplished by means of other electronic devices such as pen registers, Smith v. Maryland, 442 U.S. 735 (1979), and electronic tracking devices, or beepers. United States v. Karo, 468 U.S. 705 (1984); United States v. Knotts, 460 U.S. 276 (1983). The devices you describe have been compared to beepers, devices which emit periodic signals that can be picked up by a radio receiver. United States v. Knotts, 460 U.S. at 277. See Note, Electronic Monitoring of Probationers: A Step Toward Big Brother?, 14 Golden Gate U. L. Rev. 431 (1984); Electronic Monitoring, supra.

In Knotts, the Supreme Court held that the warrantless monitoring of a beeper placed inside a container of chloroform did not violate the Fourth Amendment because it revealed no information that could not

have been obtained through visual surveillance. The Court concluded that the monitoring of the beeper while the container was being transported over public thoroughfares did not invade any legitimate expectation of privacy on the defendant's part. One question left unanswered was whether the monitoring of a beeper falls within the scope of the Fourth Amendment when it reveals information that could not be obtained through visual surveillance. This question was answered in the affirmative in United States v. Karo, supra.

In Karo the Court was confronted with the monitoring of a beeper located inside a private residence, an area not open to visual surveillance. The Court concluded such monitoring in the absence of a search warrant or an exception to the warrant requirement violated the Fourth Amendment rights of persons having "a justifiable interest in the privacy of the residence." 468 U.S. at 714. The Court rejected the contention that law enforcement officials

> should be completely free from the constraints of the Fourth Amendment to determine by means of an electronic device . . . whether a particular article -- or a person, for that matter -- is in an individual's home at a particular time.

468 U.S. at 716.

In addition to the two-point analysis originating with Katz, Texas courts have directed attention to the nature of the activity claimed to be a "search." Where the activity is not aimed at discovering evidence of a crime, some courts are inclined to rule that the activity is not a search. These courts view a "search" as a "quest for, a looking for, or a seeking out of that which offends against the law." Vargas v. State, 542 S.W.2d 151, 153 (Tex. Crim. App. 1976), cert. denied, 429 U.S. 1109 (1977); Garber v. State, 671 S.W.2d 94, 97 (Tex. App. - El Paso 1984, no pet.). See also Marshall v. United States, 422 F.2d 185, 189 (5th Cir. 1970) ("search" implies a probing, exploratory quest for evidence of a crime). Given this definition, it can be argued that the monitoring of electronic devices in the manner under consideration here is not a search, since the purpose of the monitoring is not to uncover evidence of criminal activity, but to confirm compliance with a condition of probation. The monitoring devices (unlike beepers) are not to be employed in conjunction with criminal investigations and therefore will not convey information suggesting criminal activity is taking place in the probationer's home. The report submitted to the Texas Criminal Justice Policy Council advanced a similar argument:

> It could . . . be argued that the use of an electronic device which merely indicates whether a person is complying with his curfew restriction, would not constitute a search. The . . . device currently utilized as a condition of probation is

> not capable of monitoring conversations, nor can
> it determine what the individual is doing inside
> the confines of his home.  Its sole purpose is to
> ensure that the probationer is complying with
> the conditions of probation.  It is true that
> the . . . device generates information which could
> not otherwise be obtained by visual surveillance,
> but that alone should not taint the device because
> its installation is with the client's consent.

Electronic Monitoring, supra, at E-17-E-18.

These are persuasive arguments.  However, given the conclusion in Macias v. State, supra, that the taking of urine samples from a probationer is a search and the fact that electronic monitoring devices serve the needs of law enforcement in a manner similar to the detection and investigation of crime, we will assume for the sake of argument that the electronic monitoring of probationers is a "search" for the purposes of the Fourth Amendment.  Assuming that a search occurs when an electronic device worn by a probationer is monitored by probation officials, it is clear that such monitoring cannot be justified in this state on a theory of consent or waiver.

The Court of Criminal Appeals analyzed the issue of consent in Tamez v. State, supra.  After observing that a "probationer, like a parolee, has the right to enjoy a significant degree of privacy," the court ruled that the probationer's acceptance of the condition of probation permitting warrantless searches did not authorize searches in violation of the Fourth Amendment:

> It is clear that protection afforded by the
> Fourth Amendment and Article I, Sec. 9, Texas
> Constitution, extends to probationers.  This court
> has consistently and knowingly made this clear
> in ruling on appeals from orders revoking
> probation.  (Citations omitted).
>
> A diminution of Fourth Amendment protection and
> protection afforded by Article I, Sec. 9, Texas
> Constitution, can be justified only to the extent
> actually necessitated by the legitimate demands of
> the probation process.  A probationer may be
> entitled to a diminished expectation of privacy
> because of the necessities of the correctional
> system, but his expectations may be diminished
> only to the extent necessary for his reformation
> and rehabilitation.
>
> Further, it is clear that in accepting the
> condition of probation the appellant's 'consent'
> was not in fact freely and voluntarily given.  The

> choice to reject probation and go to prison or
> accept the probationary condition was really
> no choice at all.  It was in legal effect coerced.
> (Citation omitted).

534 S.W.2d at 692.  Thus, the use of electronic monitoring devices in the probation system may not be justified on the theory of consent.

The passage from Tamez just quoted above does, however, provide the theory under which we believe the use of electronic monitoring devices can be constitutionally justified.  As the Court of Criminal Appeals observed, probationers, because of the conditional liberty they are granted, do not enjoy the same expectation of privacy as non-probationers.  Their expectation of privacy is diminished only to the extent necessary for their rehabilitation and the legitimate demands of the probation process.  Thus, where it is determined that a probationer may be subjected to reasonable limitations on his freedom of movement or associations, we believe that reasonable and minimal intrusions into the probationer's privacy interests to confirm compliance with the conditions of probation are permissible.

Indeed, the Code of Criminal Procedure has authorized minimal intrusions of the probationer's privacy in the home for years.  Article 42.12, section 6(a)(5), authorizes the court having jurisdiction to impose as a condition of probation the condition that the probationer shall "[p]ermit the probation officer to visit him at his home or elsewhere."  We believe the privacy intrusion resulting from the monitoring of the electronic devices you describe is strikingly different from the intrusion resulting from an actual visit by a probation officer.  Our research has yielded no Texas decision invalidating a condition of probation based on section 6(a)(5) of article 42.12.  The reason for this may be that conditions of this type are considered an integral part of the probation process and have been routinely sustained elsewhere, even against a claim that they infringe on a probationer's right of privacy.  See Cohen and Gobert, supra, §6.67 (citing United States v. Manfredonia, 341 F.Supp. 790 (S.D.N.Y.), aff'd, 459 F.2d 1392 (2d Cir.), cert. denied, 409 U.S. 851 (1972)).  Thus, it is worth noting the courts have had little quarrel with more intrusive conditions in the past.

Our discussion to this point has centered on the privacy interests of the probationer.  We must now address the interests of third persons residing in the home of the probationer, the subject of your second question.

In those states in which warrantless search conditions of probation have been approved under the theory of consent or waiver, the courts have not required special procedures, such as obtaining a warrant prior to the search, to safeguard the rights of third persons residing with the probationer.  See People v. Mason, 488 P.2d 630, 634 (Cal. 1971), cert. denied, 405 U.S. 1016 (1972); State v. Griffin, 376

N.W.2d 62, 67 (Wis. Ct. App. 1985), aff'd, 388 N.W.2d 535, 541 (Wis. 1986). But see State v. Velasquez, 672 P.2d 1254, 1260 n.3 (Utah 1983) (dicta suggesting that a warrant be obtained prior to such searches). The rights of such third persons will be affected whether or not a warrant is required, and in view of the protection given the probationer's rights, there is no need to require a warrant simply to protect third persons' rights. State v. Griffin, 388 N.W.2d at 541.

Understandably, Texas courts have not had occasion to consider this issue following the Tamez decision. One court which did address the rights of third persons in this context framed the issue thus:

> We recognize that probationary status can and should carry with it a reduced expectation of privacy. But a probationer is living within society, not confined to a penal institution. . . . A search of the probationer's home cannot avoid invading the privacy of those with whom he may be living, whether they be immediate family, other relatives, or friends. Probationary status does not convert a probationer's family, relatives and friends into 'second class' citizens.

> . . . .

> We can only assume a 'respectable position' [in the debate over the validity of warrantless search conditions of probation] if we can give fair consideration to the rights of innocent third parties who may be caught up in the web of the probationary system or probationary process. These people are not stripped of their right of privacy because they may be living with a probationer or he may be living with them. While a probationer's right of privacy may be justifiably diminished while on probation, the rights of these people are not so diminished. We, as well as the trial courts, would be derelict in our duties if we failed to consider the rights of these innocent others so that they are not swept away by the probationary process.

> . . . .

> These privacy considerations are inextricably interwoven in the relationships between a probationer and his family and friends no less than in the relationships between a nonprobationer and his family and friends. The search of a

> probationer's home will inevitably affect the
> privacy of those with whom he is living.

State v. Fogarty, 610 P.2d 140, 151-52 (Mont. 1980). Quoting and relying in part on Tamez, the Montana Supreme Court concluded that an unlimited search condition was patently unconstitutional under both the federal and Montana constitutions. The court also held that in order to protect the legal interests of innocent third persons, a search warrant based on probable cause must be obtained before a probationer's residence may be searched. It is doubtful that a condition authorizing a search of a probationer's person or property authorizes searches of third persons or their property. See People v. Veronica, 166 Cal. Rptr. 109 (Cal. App. 1980). The courts are divided as to whether evidence seized in a search conducted pursuant to a condition of probation may be used against third persons residing with the probationer. Compare People v. Veronica, supra, with Luke v. State, 344 S.E.2d 452 (Ga. App. 1986).

The cases discussed in the preceding paragraphs involved physical searches of the probationer's person or property conducted by probation officials or police. Each incident involved an actual, physical intrusion into the privacy of third persons. We refer to these cases only to demonstrate the difficulties that inhere when a condition of probation authorizes a physical invasion of property shared by a probationer and family or household members. Electronic monitoring devices do not threaten third party interests in this manner. Therefore, the assumptions made in the discussion of the probationer's privacy interests cannot be made with regard to third party privacy interests. By the same measure, we think the distinctions drawn in the same discussion between the use of beepers and electronic monitoring devices, distinctions not relevant to the privacy interests of the probationer, are relevant here. The comparison between the nature and level of intrusion posed by electronic monitors and home visits by probation officers is pertinent here, too.

In our opinion, the possibility that the privacy interests of third persons residing with electronically monitored probationers will be compromised is remote and the effects of any intrusion into the privacy of the home ephemeral. As you describe them, electronic monitoring devices convey no information regarding activities within the home other than the presence of the probationer. Indeed, the devices impart no information whatsoever concerning the presence or activities of third persons in the home. With one exception, the systems you advocate do not subject the probationer to constant surveillance in the home and thus pose the prospect of only sporadic and transient intrusions. We do acknowledge the ever-present possibility that a condition of probation, constitutional on its face, may be unconstitutionally applied in a given situation. See, e.g., Cohen and Gobert, supra, §6.16. However, you do not suggest, and we shall not speculate, under what specific factual circumstances a

condition of probation impermissibly interferes with the constitutional rights of third persons. Suffice it to say that under the information we have been provided and upon our review of relevant authorities, we cannot conclude that the mere use of such devices compromises the privacy interests of third persons living in a probationer's home.

## Due Process Considerations

The Fourteenth Amendment's guarantee of due process may be relevant in determining whether a probationer may object to a particular condition of probation. See Cohen and Gobert, supra, §5.10.

The due process clause has been invoked to contest conditions of probation which are vague or interfere with a probationer's access to courts. Id. Due process and the Texas guarantee of due course of law, Tex. Const. art. I, §19, require a defendant to receive a hearing before the imposition of conditions which restrict personal freedom and liberty of movement. Warr v. State, 591 S.W.2d 832 (Tex. Crim. App. 1979). The conditional freedom afforded probationers may not be terminated without appropriate procedural safeguards. Gagnon v. Scarpelli, 411 U.S. 778 (1973). Whether a probationer may demand certain conditions of probation is doubtful, however.

In order to support a violation of due process, a person must establish a deprivation of liberty or property by government action. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979). The courts look to the nature of the individual's interest and require the person to have a legitimate claim of entitlement to it. Id. In Greenholtz, the Supreme Court concluded that a statute which created a possibility of parole provided prison inmates no more than a mere hope that parole would be obtained. The parole eligibility provisions of article 42.12 have been held to create no protectible interest under the due process clause. Moncier v. State, 704 S.W.2d 451 (Tex. App. - Dallas 1986, no pet.). Whether Greenholtz requires probationers to locate a liberty interest in a statute, administrative rule, or constitutional provision is open to debate. See Cohen and Gobert, supra, §2.27.

If Greenholtz is extended to probation granting procedures, it is unlikely that a potential probationer will be deemed to have a liberty interest in receiving particular conditions of probation. A person convicted of a crime has no inherent right to probation. See Cohen and Gobert, supra, §4.02. In the parole setting, it has been held that terms specifying where a parolee shall live are not subject to a due process challenge. Alonzo v. Rozanski, 808 F.2d 637 (7th Cir. 1986). Article 42.12, section 6(a), of the Code of Criminal Procedure neither limits nor requires the court to impose the conditions specified in that section. See Macias v. State, supra. The primary limitation on the setting of conditions of probation is that they be reasonably related to the treatment of the accused and the protection

of the public.  Tamez v. State, supra.  Assuming that a potential probationer is an appropriate subject for restrictions on his freedom of movement and associations, we do not believe that either article 42.12 or Tamez create an expectation that these restrictions will be imposed in a particular manner.  Since we have already concluded that electronic monitoring devices are no more restrictive than other acceptable conditions, we do not believe a probationer may object to their use as a condition of his probation.

Your first two questions are answered in the negative.

### III.

Your third question, concerning the possible requirement that a probationer wear a device attached to his body during the period of probation, raises an issue under the Eighth Amendment to the United States Constitution, which prohibits the infliction of cruel and unusual punishment.  See also Tex. Const. art. I, §13.  The few cases raising this issue suggest that conditions which are excessively harsh or impossible to comply with may be invalid under this constitutional provision.  Cohen and Gobert, supra, §5.10.  The Eighth Amendment is relevant to your third question because it has been raised to contest the validity of conditions requiring the probationer to wear a particular item of clothing or publicly display a symbol signifying his conviction for a particular crime.

The Supreme Court has stated that the inquiry into the excessiveness of a particular punishment involves two aspects:  first, the punishment must not involve an unnecessary and wanton infliction of pain, and second, it must not be grossly out of proportion to the severity of the crime being punished.  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  The second aspect is implicit in the requirement that a condition of probation bear a reasonable relationship to the treatment of the accused and the protection of the public and is, in every case, a fact question.  See Tamez v. State, supra.  We will therefore consider whether a condition of probation which requires the probationer to wear an electronic monitoring device involves an unnecessary and wanton infliction of pain.

In one case, the defendant, on probation as a result of his conviction in a purse-snatching incident, was ordered to wear shoes with leather soles and metal taps on the heels and toes anytime he left his house.  People v. McDowell, 130 Cal. Rptr. 839 (Cal. App. 1976).  The probationer complained that this condition of probation was tantamount to requiring him to wear a sign proclaiming he was a thief.  The court disagreed with the notion that persons who wore shoes with metal taps were thought to be thieves by the public and noted that the condition bore a direct relationship to the probationer's budding career as a purse snatcher.  130 Cal. Rptr. at 843.  Compliance with the condition would foster rehabilitation and promote public safety.  The sound of the taps, the court concluded, would

remind the probationer of the fact that he was on probation and would quell any temptation he might have during the period of probation to engage in this type of criminal behavior. Id. The court accepted the substance of the condition, but ordered the trial court to clarify the condition in light of an ambiguity concerning its application. Id.

A recent Florida case upheld a condition imposed as part of probation for a conviction of driving under the influence of alcohol which required the probationer to affix to his personal vehicle a bumper sticker reading, "CONVICTED D.U.I. -- RESTRICTED LICENSE." Goldschmitt v. State, 490 So.2d 123 (Fla. Dist. Ct. App. 1986). The probationer likened the condition to outmoded forms of publicly suffered punishment such as the stock and pillory. The court observed, however, that "[t]he mere requirements that a defendant display a 'scarlet letter' as part of his punishment is not necessarily offensive to the Constitution." 490 So.2d at 125.

The Florida court believed the rehabilitative effect of probation may be enhanced if it "inflicts disgrace and contumely in a dramatic and spectacular manner." Id., quoting United States v. William Anderson Co., Inc., 698 F.2d 911, 913 (8th Cir. 1982), overruled on other grounds, United States v. Missouri Valley Constr. Co., 741 F.2d 1542 (8th Cir. 1984). The court in the William Anderson case also approved behavioral sanctions imposed as conditions of probation, citing their deterrent effect:

> Measures are effective which have the impact of the 'scarlet letter' described by Nathaniel Hawthorne, or the English equivalent of 'wearing papers' in the vicinity of Westminister Hall like a sandwich-man's sign describing the culprit's transgressions.

698 F.2d at 913.

The Goldschmitt court also considered the possibility that innocent third persons might be punished by the use of the bumper sticker, insofar as such persons might own or operate the probationer's vehicle. Its doubts were removed when it was made clear that the message on the sticker would be obscured with a special device when persons other than the probationer were using the vehicle. 490 So.2d at 126 n. 5.

The courts will not, however, sanction probation conditions which are excessively harsh and demeaning. The Goldschmitt court cited as an example Bienz v. State, 343 So.2d 913 (Fla. Dist. Ct. App. 1977). Bienz concerned a probationer who was placed in a halfway house with directions that he obey all orders. The rules of the halfway house stated that the probationer was free to leave if any task seemed demeaning. A supervisor at the facility accused the probationer of behaving like a baby and, as a learning experience, ordered him to

wear diapers over his clothing. The probationer balked at the order, choosing to leave the facility instead. His probation was later revoked. The court resolved the case on other grounds but commented: "[s]uffice it to say that a command . . . that an adult male wear diapers in public would certainly be demeaning in the minds of so-called reasonable men." 343 So.2d at 915; see Goldschmitt v. State, 490 So.2d at 126.

It is apparent, then, that a probation condition which requires the probationer to wear a prescribed item will not offend the Eighth Amendment merely because it subjects the probationer to some measure of public disgrace or embarrassment, provided the condition otherwise serves the goals of probation. The electronic monitoring devices you describe do bear the possibility of exposing the probationer to public obloquy, particularly those which must be worn on the probationer's body. We do not believe the potential for such stigmatization, though, renders the employment of such devices an excessive form of punishment. Moreover, we think the use of electronic monitoring devices would enhance the rehabilitation of a probationer for whom a curfew is a permissible condition. The monitors would not only encourage compliance with curfew, but act as a reminder of the probationer's conditional freedom. We cannot foresee the possibility that third persons residing with the probationer will themselves be exposed to cruel and unusual punishment by this use of an electronic monitoring device, particularly since there appears to be little chance that the device can be applied to persons other than the probationer.

IV.

With respect to your fourth question, a requirement that a monitoring device be attached to a telephone in the probationer's home (so-called "passive" monitoring systems) does not change our answers to your first two questions. There are four reasons for this conclusion. First, it is clear that the devices you describe are incapable of transmitting anything more than an electrical signal or a voice exemplar of the probationer. Second, as we concluded in our discussion of First Amendment concerns, we do not believe that a probationer may object to the employment of a device which requires him to provide voice samples for the purposes of monitoring compliance with a condition of probation. Cf. United States v. Franks, supra; Macias v. State, supra. Third, whatever intrusion is occasioned by devices which must be attached to a telephone, it is brief and significantly less intrusive than other means available for monitoring a probationer's progress. Compare Code Crim. Proc. art. 42.12, §6(a)(5). Fourth, the telephone requirement notwithstanding, we remain convinced that electronic monitoring devices ultimately serve the purposes of the probation process by promoting the rehabilitation and reformation of the probationer while providing for the protection of the public at large. We hasten to add that this discussion should not imply that passive monitoring systems are preferable to "active"

monitoring systems. Such a decision must be made in the first instance by those with administrative authority and not by this office.

### V.

To summarize, we conclude that the employment of electronic monitoring devices as a condition of probation does not violate a constitutionally protected interest of a probationer or a third person residing in the probationer's home, provided the probationer may be subjected to reasonable limitations on his freedom of movement and associations. The attachment of electronic monitoring devices to either a probationer's body or to a telephone in the probationer's home does not violate a constitutionally protected interest of the probationer or a third person residing in the probationer's home. We caution that we are here expressing no judgment regarding the reliability of any particular monitoring system and the implications of that reliability on the probation revocation process. See generally, People v. Ryan, 510 N.Y.S.2d 828, 832 (N.Y. Crim. Ct. 1987) (dicta suggesting that in-depth scientific and technical testimony will be required when the accuracy or reliability of electronic monitoring devices is made an issue in probation revocation proceedings).

### S U M M A R Y

The employment of electronic monitoring devices as a condition of probation does not violate a constitutionally protected interest of a probationer or a third person residing in the probationer's home, provided the probationer may be subjected to reasonable limitations on his freedom of movement and associations. The attachment of electronic monitoring devices to either a probationer's body or to a telephone in the probationer's home does not violate a constitutionally protected interest of the probationer or a third person residing in the probationer's home.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General